No. 13417

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

GLORIA LOIS CARLSON BOATMAN,

Plaintiff and Appellant,

-vs-

HOWARD BERG,

Defendant and Respondent.

Appeal from:  District Court of the Seventeenth Judicial
              District,
              Honorable Thomas Dignan, Judge presiding.

Counsel of Record:

    For Appellant:

        Morrison and Ettien, Havre, Montana
        J. Chan Ettien argued, Havre, Montana

    For Respondent:

        McKeon and McKeon, Malta, Montana
        John C. McKeon argued, Malta, Montana

                              Submitted:  January 31, 1978

                                Decided: APR 11 1978

Filed: APR    1978

_____
Thomas J. Kearney        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court:

Plaintiff instituted this action in the District Court, Phillips County, seeking a declaration that defendant is a constructive trustee over certain property transferred from plaintiff to defendant. From a judgment of the District Court denying such relief and quieting title to the property in defendant, plaintiff appeals.

Plaintiff is Gloria Lois Carlson Boatman. Defendant is her older brother, Howard Berg. In 1953, when plaintiff was sixteen years of age, she married Clyde Carlson, a farmer and rancher. Plaintiff did not work during the marriage, but remained at home and cared for their four children. Clyde Carlson died in 1959.

Plaintiff retained Stephen Granat, a Malta attorney, to handle Carlson's estate. The estate was debt ridden and consisted almost entirely of real property. Plaintiff acted as administratrix and in that capacity leased the real property in the estate to Morrell Tribby, her brother-in-law. The lease originally was for a three year term, but was modified by plaintiff to cover only the year 1960. Plaintiff testified defendant warned her that Tribby was trying to cheat her out of her property, but defendant denied making such statements. Also in her capacity as administratrix and on the advice of neighbors, plaintiff had several calves which were property of the estate branded with her brand and sold. She used the proceeds of the sale partially to make a payment on the land, and partially for her own personal purposes. She testified she became frightened when her attorney informed her this action amounted to embezzlement of estate property.

For this reason she asked defendant to help her with the administration of the estate.

Defendant agreed to help. He moved onto the property and began farming it. He paid his own expenses but did not pay rent. Over a period of about five years, plaintiff assigned her interest in four separate tracts of land to defendant. These four tracts are subject of the instant action for a constructive trust.

1. The "Mahlum" tract.

Plaintiff and Carlson had purchased about 160 acres of land from Mabel Mahlum as joint tenants on a contract for deed dated April 22, 1957. This property is referred to as the Mahlum tract. The contract provided for payments in the amount of one-fourth of the gross crop, with a minimum of $300 payable in crop or cash. Also, 5% interest was charged.

On June 2, 1961, plaintiff, defendant and Mabel Mahlum met in the office of attorney Granat and executed an assignment of the contract from plaintiff to defendant. Plaintiff admits that her signature is on the assignment, but does not remember such a meeting and disclaims any knowledge of the legal effect of the assignment.

At the time he drafted the assignment, attorney Granat verified with the escrow that there remained due $5,500 of the $6,000 principal, and $275 back interest. The instrument states the assignment is for nominal consideration. It is not contested that subsequent to the assignment defendant paid the back interest, the remaining principal, and received the deed to the property.

Defendant introduced evidence of additional consideration for the assignment. The year 1961 was a drought year on the land

- 3 -

and defendant, who had farmed the land at his own expense, received a federal crop insurance payment of $832.72. Defendant paid this amount into the estate. The District Court found this payment, along with the payment of back interest when the contract was in default, constituted sufficient consideration for the assignment.

## 2. The State Lease

At his death in 1959, Carlson held a state lease covering about 320 acres of land. This lease expired in 1961, and defendant renewed it in plaintiff's name. In 1963, plaintiff executed an assignment of the lease to defendant. Again, she admits her signature but does not remember signing it. Defendant testified that both parties agreed to the assignment, and it was in consideration for defendant's help with the estate. The periodic payments were thereafter made by defendant.

The lease expired in 1971, and defendant took out the new lease in his own name. There is no evidence plaintiff made any effort to acquire the 1971 lease.

The District Court took judicial notice of the regulations of the Commission of State Lands and Environment prohibiting the subleasing of state land for profit. The court found that since the lease assigned to defendant had expired, this question is moot. We agree and decline to consider the "state lease" issue further.

## 3. The "Rueb tract

Prior to his death, Carlson purchased about 320 acres of property on a contract for deed from Reinhold and Alice Rueb. This property is referred to as the "Rueb" tract. When Carlson died, plaintiff became the owner of a one-third interest with the children owning the other two-thirds interest. Plaintiff expressed to attorney

- 4 -

Granat the desire to sell the property to defendant, but was told that she could only dispose of her own one-third interest. In January 1965, defendant had a quitclaim deed prepared for the purpose of conveying plaintiff's one-third interest to him. Plaintiff had remarried by this time and was living in Indiana. Defendant mailed the deed to her along with a cover letter requesting her to sign the deed and return it. The letter stated, in pertinent part:

> "* * * I am enclosing a deed for you to sign if its agreeable with you.
>
> "I talked to a guy from the Federal Land Bank last fall, and he said the only way I possibly could borrow the money is to get a deed, so this is where I'm starting -- If I can get the money.
>
> "I will pay off Rinhold and Alice the $3000.00 for the 1/3 interest that is in your name. This would give me 1/3 interest and 2/3 interest for the kids. I will pay the back interest and keep up the taxes for the use of there share for 3 crop years, after that I will give them 1/4 of the crop split between them, on there 2/3 share -- less 2/3 of the taxes. * * *
>
> "The main reason I would like to get it payed off is that actually Rinhold and Alice could step in and repossess it and the kids would end up with nothing. * * *"

On March 1, 1965, plaintiff signed the quitclaim deed in Indiana and returned it to defendant.

The original contract price for the "Rueb" tract was $5,500. At the time of the transfer in 1965, there was a $3,120 remaining balance on the principal. The contract was in default and back interest and taxes were owing. Subsequent to the quitclaim deed, which amounted to a transfer of a 1/3 interest in the property, defendant paid off the entire remaining balance, including the back taxes and interest.

The District Court found:

"* * *There has been no showing that the price paid by the defendant at the time of the purchase of said 1/3 interest in the 'Rueb' tract was less than the market value for said 1/3 interest at the time of the purchase and as such, must be considered as fair and adequate consideration for the 'Rueb' tract."

4. The "Great Northern" tract

This property consists of about 17.5 acres adjoining the Great Northern Railway. It was owned by Carlson at his death. Plaintiff quitclaimed her 1/3 interest in this property to defendant August 10, 1966.

Defendant testified the consideration for this transfer was the cancellation of a preexisting debt of $500. Defendant advanced the money for a Buick automobile for plaintiff and Carlson and was never repaid. Plaintiff admitted defendant paid for the automobile and had not been repaid, but she denied there was ever any bargain regarding cancellation of the debt for the transfer of the "Great Northern" property. Defendant again does not recall signing the quitclaim deed.

The District Court held the cancellation of the indebtedness was fair and adequate consideration for the quitclaim deed.

The theory of plaintiff's case is that a constructive trust should be imposed on all of the above described property for her benefit. The imposition of a constructive trust is governed by section 86-210, R.C.M.1947:

"Involuntary trust resulting from fraud, etc. One who gains a thing by fraud, accident, mistake, undue influence, the violation of trust, or other wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

- 6 -

It is well established in Montana that "in order to recover upon the theory of a resulting or constructive trust, the proof must be clear, satisfactory, convincing and practically free from doubt." Robuck v. Dennis, (1967), 149 Mont. 247, 251, 425 P.2d 327. Also see: Barrett v. Zenisek, (1957), 132 Mont. 229, 237, 238, 315 P.2d 1001.

The District Court, in its finding No. 8, stated:

"Plaintiff has not offered any clear, satisfactory and convincing evidence of 'fraud, accident, mistake, undue influence, violation of a trust, or other wrongful act' by the defendant in the acquisition of these four tracts * * *."

However, plaintiff contends the District Court erred in failing to make a finding on the issue of whether a confidential relationship existed between plaintiff and defendant. It is argued such a finding is necessary because one who voluntarily assumes a relation of personal trust and confidence is considered to be a trustee. Section 86-205, R.C.M. 1947. Further, if defendant was a trustee, he was bound to act in the highest good faith in dealing with the trust property, and all transactions between defendant and his beneficiary that benefit him are presumed to be entered into under undue influence and without consideration. Sections 86-301, 86-308, R.C.M. 1947.

We do not agree a finding on this issue was necessary because there is insufficient proof that defendant violated even the high standards imposed upon a trustee. The existence of a confidential relationship between a grantor and grantee is insufficient, in and of itself, to support the imposition of a constructive trust. Mahaffey v. DeLeeuw, (1975), 168 Mont. 274, 280, 542 P.2d 103. Clearly, some wrongful act must still be shown. In Roecher v. Story, (1931), 91 Mont. 28, 45, 5 P.2d 205, the Court stated:

"* * * If the evidence which is introduced to prove a fiduciary relationship at the same time shows that the actions of the trustee were done in good faith and for the benefit of the cestui que trust, there is no room for a presumption of wrongdoing on the part of the trustee."

Here, the record fails to show defendant improperly used his influence or took advantage of any trust relationship. All of the transactions were handled through plaintiff's attorney. There is no proof of any broken promise on the part of defendant to reconvey any of the property. Plaintiff's claim throughout is simply that she signed the various instruments without knowledge of their contents or legal effect.

In the case of the "Rueb" property, however, there was evidence plaintiff expressed a desire to sell the property to defendant prior to the assignment. The letter defendant sent to plaintiff accompanying the deed clearly explains: "This would give me 1/3 interest and 2/3 interest for the kids." The "Mahlum" assignment was executed at a meeting of all the parties to the transaction and plaintiff's attorney. With respect to these transactions, attorney Granat testified, on examination by the court:

"THE COURT: And as to Mrs. Boatman here, when she came into your office did she discuss with you papers that you had drawn for her or would she just sign them outright? A. Like every other client, I would try to explain what the documents were, Your Honor.

"THE COURT: Did she understand them? A. To the best of my knowledge, yes.

"* * *

"THE COURT: Did or would you say that the Defendant was being trusted by the Plaintiff in this case, that she trusted him? A. Far as I can recall these conversations were -- well matters were discussed and we tried to the best of our ability to make both parties understand what they were getting into and what the result of the transactions would be. I was with them, and trying to explain what the legal consequences would be of these transactions that these two parties were getting into, Your Honor."

- 8 -

Considering all of the circumstances, we find no showing defendant breached even the duties of a trustee or committed any other wrongful act in the inducement of these transactions.

We further conclude the evidence supports the court's finding that there was consideration for the transfers. The contracts on both the "Mahlum" tract and the "Rueb" tract were clearly in default when they were assigned to defendant. While the evidence is conflicting regarding the amount of plaintiff's equity in the "Mahlum" property, it was at most $1,000, and there is ample evidence to support the District Court finding that it was $500. For this defendant paid more than $800 in federal crop insurance payments into the estate, of which plaintiff was clearly a beneficiary. Additionally, he paid defendant's debt to Mahlum of $275 in back taxes and interest. For a 1/3 interest in the "Rueb" tract, defendant paid the entire remaining principal of $3,120. Not only was this more than adequate for a 1/3 interest, but plaintiff also had a strong interest in protecting the property rights of her children, which could have been lost had the default not been cured by defendant's payment. Nor is it disputed that the cancellation of a $500 debt was more than adequate for the transfer of a 1/3 interest in the "Great Northern" tract. Plaintiff merely argues there was no such agreement. Defendant testified such an agreement did take place, and this Court will not review determinations of weight and credibility of testimony of witnesses made by the trial judge as a trier of fact. Kartes v. Kartes, (1977), _____Mont._____, 573 P.2d 191, 195, 34 St.Rep. 1576; Miller v. Fox, (1977), _____Mont._____, 571 P.2d 804,807, 34 St. Rep. 1367; Hellickson v. Barrett Mobile Home Transport, Inc.,/161 (1973), Mont. 455, 459, 507 P.2d 523.

In summary, this Court will sustain the findings of fact of the trial court unless there is a decided preponderance of evidence against them. Barrett v. Zenisek, supra. Here the findings of fact are clearly supported by the evidence. Nor are the conclusions of law inadequate. There was no need for a specific finding on the issue of the existence of a confidential or fiduciary relationship, because there was insufficient proof of wrongdoing on the part of defendant even if he is considered to be a voluntary trustee.

The judgment of the District Court is affirmed.

_____
Justice.

We Concur:

_____
Chief Justice

_____

_____
Justices.