No. 80-176

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

JEANNE SKIERKA and ANNETTE SKIERKA,

Plaintiffs and Respondents,

vs.

SKIERKA BROTHERS, INC., a Corporation,
JOHN SKIERKA and BERNICE SKIERKA,

Defendants and Appellants.

---

Appeal from: District Court of the Twelfth Judicial District,
In and for the County of Liberty.
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellants:

Church, Harris, Johnson & Williams, Great Falls, Montana
Douglas C. Allen arged and Donald A. LaBar argued,
Great Falls, Montana

For Respondents:

Bunn and Brown, Chester, Montana
Donald R. Marble, Chester, Montana
Jardine, Stephenson Law Firm, Great Falls, Montana
John D. Stephenson argued, Great Falls, Montana

---

Submitted: March 24, 1981

Decided: May 20, 1981

Filed: MAY 20 1981

Thomas J. Kearney
_____
Clerk

Mr. Justice Fred J. Weber delivered the opinion of the Court.

John Skierka (defendant John) and Bernice Skierka (defendant Bernice), husband and wife, and defendant Skierka Brothers, Inc. (corporation), a close-held family corporation, appeal from the judgment of the District Court of the Twelfth Judicial District, Liberty County, the Honorable B. W. Thomas, presiding. After trial without a jury, the District Court concluded that Jeanne Skierka (plaintiff Jeanne) and Annette Skierka (plaintiff Annette) had established their right to rescind their transfer of assets to the corporation, made in exchange for stock, on the basis of fraud and mutual mistake. The District Court also concluded that the plaintiffs had established their right to have the corporation liquidated under section 35-1-921(1)(a)(ii), MCA, because of oppressive acts by defendant John Skierka, who is in control of the corporation. The judgment orders the corporation to transfer back to the plaintiffs whatever property and assets they have transferred to the corporation in exchange for stock, together with additional property and assets representing one half (50%) of the fair market value of the other corporate assets on the date of transfer, or, in the alternative, to transfer to the plaintiffs other property and assets of equivalent value, as the parties may agree. If the parties fail to agree within a reasonable time as to the other assets to be transferred to the plaintiffs, then the judgment decrees that the court will dissolve the corporation in accordance with section 35-1-922, MCA.

Appellants/defendants present the following issues for review:

1. Is plaintiffs' action barred by the applicable

statute of limitations?

2. Did the District Court err in concluding that defendant John Skierka's acts as executor and as surviving partner constituted a fraud?

3. Did the District Court err in concluding that the parties acted under mutual mistake at the time of plaintiffs' transfer of assets to the corporation?

4. Did the District Court err in decreeing that the corporation may be liquidated on the grounds of oppression?

We affirm the District Court's findings and conclusions on all issues.

Albert Skierka and the defendant John were brothers. Albert died, leaving his widow plaintiff Jeanne, and his daughter, plaintiff Annette, surviving.

For a number of years before his death, Albert had conducted a ranching and farming business as an equal partner with defendant John under the partnership name Skierka Brothers. Portions of the land used by the partnership were owned separately by John and Bernice Skierka and Albert and Jeanne Skierka. No land was owned in the partnership name. The land which was used by the partnership and owned separately had been acquired by the two families in a checkerboard fashion.

During Albert's lifetime, he and defendant John discussed the desirability of incorporating in order to insure continuity of management and to plan for minimizing taxes. Much of the preliminary incorporation work was completed by the date of Albert's death, February 5, 1973.

Albert left a will leaving his estate to his widow, plaintiff Jeanne, and naming his brother, defendant John, as executor without bond. As executor, defendant John filed his first and final account and petition for distribution on

June 26, 1974. All of Albert's property was distributed to plaintiff Jeanne.

On May 1, 1973, while defendant John was serving as executor of his brother's estate, a meeting was held between plaintiffs Jeanne and Annette and defendants John and Bernice for the purpose of discussing incorporation of the ranching and farming business. An attorney and an accountant, each of whom had been consulted in this matter, were also in attendance. At the conclusion of the meeting, several documents were signed by the parties, which resulted in the following:

1. All property owned by plaintiff Jeanne and used in the partnership operation, as well as her family residence, were transferred to the new corporation, Skierka Brothers, Inc., in exchange for 12,318 shares of its capital stock.

2. All property owned by defendants John and Bernice and used in the partnership, as well as their family residence, were also transferred to the corporation but in exchange for 12,682 shares of its capital stock. (John received 7,502 shares and Bernice 5,180 shares.) Defendant John's family thereby acquired 364 shares more than plaintiff Jeanne's family, resulting in voting control which became the critical issue.

The attorney in attendance had advised the parties to transfer all real property holdings, whether personal residence or farming property, to the corporation in exchange for stock holdings in order to secure certain tax advantages. During the May meeting the attorney and the accountant explained that Jeanne would receive slightly less than 50 percent of the stock because her personal residence was worth less than the defendants' personal residence, both of which were transferred to the corporation in exchange for

-4-

stock.

The stock issued to the parties is subject to restrictions contained in the bylaws of the corporation. These restrictions provide that the stock can only be transferred by written consent of the holders of a majority of the stock. In the absence of such consent, the shareholder desiring to sell is to give written notice of his intentions to the secretary of the corporation. The corporation then has a 90-day option to purchase the stock at a price set by a vote of the holders of a majority of the stock. In the event the corporation elects not to purchase the stock, the other stockholders have a 90-day option to purchase at the price set by the holders of a majority of the stock. The articles of incorporation provide that the term of the corporation is "perpetual". These restrictions on stock transfer and the significance of her minority shareholder status were never explained to Jeanne Skierka at the meeting. In fairness to all, we point out that the evidence indicates that none of the parties appreciated the significance of the control which the defendant John's family obtained.

The directors of the new corporation were defendants John and Bernice, and plaintiff Jeanne. Following the organizational meeting plaintiff Jeanne made gifts of stock to plaintiff Annette. Plaintiff Annette was made a director at the next annual meeting of the corporation in 1974.

For a year or more after the incorporation, the personal relationships between the parties remained cordial and friendly. Their relations started to deteriorate when plaintiff Jeanne, after consulting with her own attorney on May 29, 1975, came to a realization of her position as a minority stockholder and of the restrictions on the sale of her stock. Her attorney wrote a letter to the corporation's

attorney requesting that Jeanne's stock interest be made equal to that of John and Bernice Skierka. No action was taken on this request, but it resulted in an open break between the two families.

At all of the corporation meetings through 1976, the parties unanimously agreed on the stock valuations. After 1976, plaintiffs Jeanne and Annette voted against the stock valuations upon advice of counsel, based upon a claim of insufficient value.

In an effort to remedy the unequal stock interest and to give plaintiff Jeanne an equal voice with defendant John in the conduct of the corporation, Jeanne called for a special meeting of the corporation. This meeting was held on April 27, 1977, and all directors were present. Motions to amend the bylaws to create an office of executive vice president having equal power and authority with that of the president and to elect plaintiff Jeanne to that office were moved by plaintiffs Annette and by Jeanne, who voted in favor of each. Defendants John and Bernice voted against the motions. Each of the resolutions failed for lack of a majority vote.

Shortly thereafter, on April 29, 1977, plaintiffs Jeanne and Annette filed a complaint seeking to dissolve the corporation. The plaintiffs alleged fraud and oppressive conduct on the part of defendant John and his family, waste of corporate assets, and that the corporation was deadlocked.

After trial, the District Court found the evidence insufficient to support the allegation that the corporation was deadlocked. It did find that defendant John, by permitting himself to be placed in control of the corporation, violated the fiduciary duties of a trustee, in his capacity as executor of his deceased brother's estate and as his

deceased brother's surviving partner, and therefore, acted fraudulently under section 72-20-207, MCA. The court also found that the parties, in transferring their assets to the corporation, made the transfer in the mistaken belief that each family would have equal ownership and equal voice in the management of the business. Last, the court found the acts of defendant John in controlling the corporation were oppressive. As a result, the court ordered that the transaction by which plaintiff Jeanne transferred property to the corporation be rescinded, and that one half of the corporation's other assets be transferred to Jeanne, or else the court would liquidate the corporation itself.

ISSUE #1: STATUTE OF LIMITATIONS

Former section 93-2607(4), R.C.M., 1947, now section 27-2-203, MCA, set the following period of limitation:

"_Two-year limitation_. Within two years:

". . .

"4. An action for relief on the ground of fraud or mistake, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

Defendants argue that any fraud or mistake occurred on or prior to May 1, 1973, the date of plaintiff Jeanne's transfer of property in exchange for stock, so that the above statute bars this action which was filed over three years later. Defendants further argue that the running of the statute was not tolled pending plaintiff Jeanne's actual discovery of her inferior position, because she could or should have discovered her position in 1973 when the difference in stock ownership was explained to her, and all terms and bylaws of the corporation were set forth in the documents which she executed as secretary-treasurer. Defendants cite

-7-

Kerrigan v. O'Meara (1924), 71 Mont. 1, 227 P. 819, as support for their contentions. However, that case points out the reason for distinguishing it from this appeal:

> ". . . Unless there is some relation of trust or confidence between the parties which imposes upon a defendant the duty of making a full disclosure of the facts, there must be some active affirmative concealment of the fraud, something said or done to continue the deception or to prevent inquiry and lull plaintiff into a sense of security, in order to postpone the running of the statute." Kerrigan, 71 Mont. 7, 227 P. 821. (Emphasis added.)

The court in Kerrigan found no relation of trust or confidence which would impose a duty to disclose upon the defendant. The court then found that the statute had not been tolled, and the plaintiff was barred from asserting his claim. The rule as stated in Kerrigan was restated by this Court in Anderson v. Applebury (1977), 173 Mont. 411, 419-420, 567 P.2d 951, 956.

Although Kerrigan did not concern a situation wherein the defendant had held a position of trust and confidence in relation to the plaintiff, that part of the stated rule is supported by other authority. See 54 C.J.S. Limitation of Actions, §194; 37 Am.Jur.2d Fraud and Deceit, §409.

Here, defendant John did occupy a position of trust and confidence in relation to plaintiff Jeanne, as discussed below. He was executor of his brother's estate at the time of incorporation. Also, he was partner to his brother at the date of death; that status imposed upon defendant John the duties of a trustee. See former section 91-3205, R.C.M., 1947, now section 72-12-704, MCA. Such relationships may have technically ended when the estate was closed and the partnership ceased to function, but the effect of the confidential relationship did not cease until May 29, 1975, the date on which the trial court found that plaintiff Jeanne

first discovered her inferior position. This action was filed on April 29, 1977, so it comes within the two-year statute of limitations.

ISSUE #2: FRAUD

The District Court concluded that plaintiff Jeanne had established her right to rescind her part of the transaction which created the corporation, as follows:

"1. Plaintiffs have established their right to have the transaction whereby Plaintiff, Jeanne Skierka, and Defendant, John Skierka, transferred assets to Skierka Brothers, incorporated, [sic] in exchange for stock rescinded on the basis that the acts and failures to act of the Defendant, John Skierka, who was then a trustee in each of his capacities as executor of his deceased brother's estate and as surviving partner, resulted in placing him in control of said corporation and are, as a consequence, fraudulent pursuant to Section 72-20-207 of the Montana Code."

That conclusion is based upon the trial court's findings that the two brothers had been equal partners in the ranch business; that defendant John was executor of his brother's estate; that at the time the incorporation took place, all parties believed control would be and was divided equally; but that, as a result of the accountant's valuation of the two houses, defendants John and Bernice ended up in control of the corporation.

Past Montana cases have assumed, without explicitly stating, that an executor of a decedent's estate occupied a position of trusteeship over the assets and in favor of the devisees. See In re Jennings' Estate (1925), 74 Mont. 449, 461-462, 241 P. 648, 652; In re Eakins' Estate (1922), 64 Mont. 84, 93, 208 P. 956, 960. (The Montana Probate Code now specifically places all the duties of a trustee upon personal representatives. Section 72-3-610, MCA.)

The trustee statutes, sections 86-301, et seq., R.C.M.,

1947, now sections 72-20-201, et seq., MCA, provide as

follows:

> "Trustee's obligation of good faith. In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. (72-20-201, MCA.)

> "Trustee's influence not to be used for his advantage. A trustee may not use the influence which his position gives to him to obtain any advantage from his beneficiary. (72-20-202, MCA.)

> ". . .

> "Duty to disclose adverse interest. If a trustee acquires any interest or becomes charged with any duty adverse to the interest of his beneficiary in the subject of the trust, he must immediately inform the latter thereof and may be at once removed. (72-20-206, MCA.)

> "Violation of obligations as fraud. Every violation of the provisions of the preceding sections of this chapter is a fraud against the beneficiary of the trust. (72-20-207, MCA.)

> "Presumption against trustees. All transactions between a trustee and his beneficiary during the existence of the trust or while the influence acquired by the trustee remains by which he obtains any advantage from his beneficiary are presumed to be entered into by the latter without sufficient consideration and under undue influence." (72-20-208, MCA.)

In its Memorandum on Order Denying Post-trial Motions,

the District Court gives its reasons for finding fraud:

> ". . . At the time the corporation was created and the assets of the parties were transferred to it, John Skierka stood in a trust relationship to Jeanne Skierka, both as the surviving partner and as executor. More than that, he stood in a relationship of trust and confidence to Jeanne as one to whom she could look and did look for guidance and advice on business affairs. The evidence further shows that at this time Jeanne was still distraught over her husband's death and was not paying close attention to business details, although desirous of carrying out her late husband's desire to convert the partnership to a corporation. In the view of this Court, John Skierka had an affirmative duty to see that he and Jeanne retained positions of equality upon creation of the corporation, and it was a breach of his duty to permit a result which placed him in a superior position, in control of the corporation and the disposition of the stock. Although defendants argue that

-10-

the transaction occurred in the presence of an inde-
pendent attorney and accountant who explained the
significance of the transaction to Jeanne Skierka, the
attorney and accountant admit that they told Jeanne
that the unequal stock ownership was not really im-
portant and they failed to discuss with her the by-law
provision which restricts the sale of stock or to advise
her what effect this could have on her as a minority
stockholder. So it is clear that the full significance
of the transaction was not explained to Jeanne.
In the Court's view this situation comes within the
definition of constructive fraud: 'Any breach of duty
which, without an actually fraudulent intent, gains an
advantage to the person in fault or anyone claiming
under him by misleading another to his prejudice . . .'
Section 28-2-406, MCA."

Because the result of the incorporation is to give
defendants John and Bernice control over the assets which
plaintiff Jeanne acquired by will from her late husband, the
trustee statutes have clearly been violated, regardless of
John's good intentions. Defendants cite the case of Boatman
v. Berg (1978), 176 Mont. 208, 577 P.2d 382, as support for
their argument that some wrongful act must be shown before a
trustee can be found to have committed fraud upon his bene-
ficiary. In Boatman, this Court found no wrongful act,
because it was clear there that the trustee had given good
and adequate consideration for all of the property which the
plaintiff had transferred to him; the trustee did not
benefit at the expense of the beneficiary. Here, defendant
John personally benefited at the expense of plaintiff Jeanne
when he gained the power to value Jeanne's stock and to con-
trol corporate operations. That condition was not present
in Boatman. The evidence does show that Jeanne, since the
date of incorporation, has been able to withdraw all the
money she has needed and that John has managed the corporation
competently and efficiently. However, competent management
does not correct the initial wrong: defendant John obtained
an advantage over plaintiff Jeanne without having fully
disclosed the consequences.

ISSUE #3:  MISTAKE

As an alternate ground in support of plaintiff Jeanne's right to rescind her transfer of property, the District Court found that there was a mutual mistake by the parties in their belief that the unequal stock ownership would make no real difference so far as control of the corporation was concerned.  If the facts were understood, then at least the parties were mistaken as to their legal effect.  See conclusion no. 2 of findings of fact and conclusions of law; Memorandum on Order Denying Post-trial Motions, p. 2.

Finding of fact no. 12 states: ". . . At the time, no one considered that the unequal stock division was of any particular legal or practical significance.  Up to the time of this meeting, it was always considered by the parties that the corporation would continue the 50-50 ownership and management relationship which existed under the partnership." That finding of the court is not disputed.  Rather, defendants claim that no mistake can be found under the law because the widow failed in her legal duty to fully read the incorporation and conveyance documents before signing, citing former section 13-313, R.C.M., 1947, now section 28-2-409, MCA.  As previously pointed out, the duty was not so much on the widow to discover as it was on the trustee to fully disclose.  In the trial court's view, the fact that no disclosure was made by defendant John indicates the mistake under which the parties were acting.

Findings of fact should not be set aside unless clearly erroneous.  Rule 52(a), M.R.Civ.P.  We find no such clear error.

ISSUE #4:  OPPRESSION

Section 35-1-921, MCA, provides as follows:

-12-

"_Power of court to liquidate assets and business of corporation--venue_. (1) The district courts shall have full power to liquidate the assets and business of a corporation:

"(a) in an action by a shareholder when it is established that:

". . .

"(ii) the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent . . ."

The District Court specifically found that no deadlock existed in the corporation (finding of fact no. 23) and that defendant John is a competent operator, managing the business competently and efficiently (finding of fact no. 17).

The court's conclusion no. 3 states: "Plaintiffs have established their right to have the assets and business of Defendant Skierka Brothers, Incorporated, liquidated pursuant to the provisions of Section 35-1-921 (1)(a)(ii) of the Montana Code on the basis that the acts of Defendant John Skierka, in control of the corporation, are oppressive."

The court's conclusion was based upon the following findings:

"16. Annual meetings of the stockholders and directors of Skierka Brothers, Incorporated, have been held every year . . . At the meetings through 1976, all parties unanimously agreed on the stock valuations. After 1976, Jeanne and Annette Skierka voted against the valuations established upon advice of counsel. In 1979, the meeting was held by unanimous consent.

". . .

"18. Since its incorporation, Defendant John Skierka, as president, has operated Skierka Brothers, Incorporated, as he has seen fit, carrying on farm and ranch operations at times and in manners that he determined, including the selling or storage of grain crops, the purchase of equipment, the purchase and sale of livestock and their operations, the hiring of employees, including members of his family, and the wages and salaries paid, whether in cash or grain shares or both, the right to use corporate equipment and supplies, including gasoline and oil, and in general all operations whatsoever.

". . .

-13-

"21. On April 27, 1977, a special meeting of the board of directors of Skierka Brothers, Incorporated, was held at the law offices of Jardine, Stephenson, Blewett and Weaver in Great Falls. Present at the meeting were all of the directors, Jeanne Skierka, Annette Skierka, John Skierka and Bernice Skierka. Also present were John Weaver and John Stephenson, counsel for Jeanne Skierka and Annette Skierka, and Don LaBar and Paul C. Bunn, counsel for Skierka Brothers, Incorporated. The motion to create an executive vice-presidency with power equal to the president was defeated, as well as a motion to expand the board of directors from four to five.

"22. The acts of Defendant John Skierka have been and are oppressive in that he has run the corporation as President as he has seen fit and since early in 1974 has denied the Plaintiffs, Jeanne Skierka and Annette Skierka, any part or voice in the operation, either as directors or as minority stockholders, except for participation in the annual meeting."

In its Memorandum on Order Denying Post-trial Motions, the court stated: "As far as the issue of oppression is concerned, this Court has taken a broad view of the application of this principle to a closely-held corporation. The finding of oppression here is based on the exclusion of the minority stockholders from participation in the operation of the corporation, and not on a lack of probity on the part of the majority."

Under section 35-1-921, MCA, the court may liquidate the corporation where the acts of those in control are oppressive. Two key areas of oppression may be mentioned. The first is the action by defendant John and his family of fixing the stock valuation at which plaintiff Jeanne's family may sell. The second is the defeating by defendants John and Bernice of the motion to create an office giving to plaintiff Jeanne power equal to that of defendant John.

Model Business Corporation Act Annotated second edition, section 97 at p. 554, points out as follows with regard to the historical right of the court to liquidate the assets of a corporation:

"American jurisprudence has created two categories
of exceptions to the rule that an equity court has
no inherent right to liquidate the assets and busi-
ness of a corporation. The first is in a suit in
equity by shareholders who are suffering as a result
of the conduct of the business of the corporation
in such a way that they can have no equitable relief
without liquidation of the assets and business of
the corporation. The second is in a bill in equity
by a creditor who can have no relief unless the
assets and business of the corporation are con-
verted to cash and operations ceased."

The Model Business Corporation Act as adopted in Montana has

extended the rules for involuntary dissolution. As pointed

out in Model Business Corporation Act Annotated at p. 554:

"The Model Act provides rules to cover involuntary
dissolutions by shareholders by defining four fac-
tual situations in which the courts will have the
power to liquidate the assets and business of the
corporation . . . Second, the controlling directors
or managers acting in an illegal, oppressive or
fraudulent manner. While the terms 'illegal', 'op-
pressive' or 'fraudulent' are subject to judicial
interpretation, they have somewhat limited defini-
tions within all jurisdictions."

A leading case in the interpretation of the Model Act
                              (Mo.App.
is Fix v. Fix Material Co. Inc. / 1976), 538 S.W.2d 351, in

which the court makes the following observations:

"The Illinois courts made it clear, when construing
the Illinois Statute (the Model for §351.485
[the Missouri statute]), that 'oppression' is, in and
of itself, an independent ground for relief not re-
quiring a showing of fraud, illegality, mismanage-
ment, wasting of assets, nor deadlock, though these
factors are frequently present . . .

"It has often been stated that oppression suggests
. . . 'a visible departure from the standards of
fair dealing, and a violation of fair play on which
every shareholder who entrusts his money to a company
is entitled to rely.' '. . . Such definitions are
suggested perimeters of the broad term rather than
narrow definitions which would tend to rob the term
of its useful flexibility. As we read the statute,
it is intended the courts will proceed on a case-by
case-basis.'"

Oppression may be more easily found in a close-held,

family corporation than in a larger, public corporation. As

the court stated in Thisted v. Tower Management Corporation

(1966), 147 Mont. 1, 409 P.2d 813:

"It is to be noted that a close corporation is one in which management and ownership are 'substantially identical to the extent that it is unrealistic to believe that the judgment of the directors will be independent of that of the stockholders.' 52 Northwestern L.R. 345. By its very nature, intracorporate problems arising in a close corporation demand the unusual and extraordinary remedies available only in a court of equity." 147 Mont. 14, 409 P.2d 820.

"'Courts of equity are not bound by cast-iron rules. The rules by which they are governed are flexible and adapt themselves to the exigencies of the particular case. Relief will be granted when, in view of all the circumstances, to deny it would permit one of the parties to suffer a gross wrong at the hands of the other party who brought about the condition . . .'" 147 Mont. 15, 409 P.2d 821.

The extensive and detailed findings of fact of the District Court disclose facts clearly sufficient to support a conclusion of oppression under the foregoing statute and authorities. The trial of this matter lasted two and one-half days. The trial court had ample opportunity to observe the witnesses and learn of their problems. The trial court's findings should not be disturbed unless we find they are "clearly erroneous". We do not so find. We do note that the trial court will not liquidate the corporation because of oppression unless the parties are unable to agree upon the property division and transfer to be made to the plaintiffs.

## CONCLUSION

We affirm the District Court's conclusions on all issues, and remand the case for proceedings in accordance with that court's judgment.

_____
Justice

-16-

We concur:

_____
John Conway Harrison

_____
Daniel J. Shea

_____
John C. Sheehy

_____
Fred B. Morrison Jr.
Justices