809 F.2d 610
 Arnold J. SAX, Plaintiff-Appellant,
v.
WORLD WIDE PRESS, INC., a Montana corporation; Instant
Ticket Factory, Inc., a Montana corporation; Zollie Kelman;
Sidney Kelman; Richard C. Pachek; Sheldon C. Masnek;
Irving Greenfield; George Robert Crotty, Jr.; and George
Campenella, Defendants-Appellees.
 No. 85-4306.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Sept. 30, 1986*.
Decided Feb. 5, 1987.
 
 R.P. Ryan, Billings, Mont., for plaintiff-appellant.
 Gregory H. Warner, Judith A. Bartram, Margaret M. Joyce Johnson and Richard F. Gallagher, Great Falls, Mont., for defendants-appellees.
 Appeal from the United States District Court for the District of montana.
 Before NELSON, HALL and KOZINSKI, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 Arnold J. Sax appeals the district court's dismissal of his amended complaint in a diversity action. The district court concluded that Sax's claims for damages stated a derivative cause of action under Montana law and that he had failed to comply with Fed.R.Civ.P. 23.1. The district court also dismissed Sax's claim to liquidate World Wide Press, Inc. (World Wide), concluding that the claim could not be brought in the form of a direct shareholder action because Sax had not alleged acts that injured him personally but only acts that damaged World Wide. Sax contends that the counts seeking damages state grounds for a direct shareholder action because they allege conduct by the defendants that injured Sax personally. He also claims that under Montana law, World Wide can be liquidated in his direct shareholder action. We disagree. Accordingly, we affirm the district court's dismissal of Sax's amended complaint.
 
 FACTS
 
 2
 World Wide, a Montana corporation, manufactures and markets punchboards and other gambling supplies and equipment. The individual defendants own more than half of the stock of World Wide. In 1972, World Wide hired Sax as its general manager for the purpose of creating a plant at Great Falls, Montana. The oral employment agreement gave Sax an option to purchase up to 75,000 shares of stock in World Wide. After Sax successfully started the business and had acquired approximately 5% of World Wide's outstanding stock, World Wide allegedly breached the option agreement by refusing to sell him further stock. Sax terminated his employment on June 30, 1976.
 
 
 3
 After he terminated his employment, Sax alleges that the individual defendants conspired to deplete World Wide's assets and depreciate the value of his stock, which "deprived [him] of income consisting of the going rate of interest of the value of his stock." He claims that the members of the conspiracy illegally sold punchboards and kept inadequate records of inventory. He also alleges that the conspirators diverted World Wide's assets to their own use by selling punchboards to their corporation, Instant Ticket Factory, Inc., at less than fair market value, by causing World Wide to make unsecured loans to themselves, and by using World Wide assets to secure personal investments. Furthermore, Sax claims that the conspirators published false and fraudulent annual statements concealing their personal interests and conflicts of interest.
 
 
 4
 On December 3, 1983, Sax filed a complaint as an individual shareholder seeking compensation for actual and punitive damages caused by the alleged wrongful conduct of the conspiracy. The complaint also sought the liquidation of World Wide. In response to the defendants' motions, the district court struck Sax's claims for actual and punitive damages under Fed.R.Civ.P. 12(f) but did not strike his claim for liquidation.
 
 
 5
 Sax filed an amended complaint in an attempt to comply with the district court's opinion and order. On July 19, 1985, the district court withdrew its earlier opinion and dismissed the counts seeking damages in the amended complaint on the ground that the claims stated a derivative cause of action and that Sax had failed to comply with Fed.R.Civ.P. 23.1. It reasoned that the alleged wrongful acts of the defendants did not injure Sax personally but rather damaged World Wide and that therefore the action must be brought derivatively. It also dismissed Sax's claim to liquidate World Wide. The district court concluded that, although Mont. Code Ann. Sec. 35-1-921(1)(a)(ii) allows a shareholder to liquidate a corporation in a direct action, the shareholder "must first identify illegal, oppressive, or fraudulent acts which have injured him personally" and that the amended complaint had failed to identify such acts. Furthermore, it concluded that Mont. Code Ann. Sec. 35-1-921(1)(a)(i), (iii), (iv) "contemplate injury to the corporation" and that, as with the damage claims, Sax had failed to follow Fed.R.Civ.P. 23.1. Accordingly, the district court dismissed Sax's complaint.
 
 DISCUSSION
 I. Standard of Review
 
 6
 We review de novo a dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).[1] Shah v. County of Los Angeles, 797 F.2d 743, 745 (9th Cir.1986); Guillory v. County of Orange, 731 F.2d 1379, 1381 (9th Cir.1984). Our review is limited to the contents of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.1983). To uphold a dismissal of this type, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven. Halet v. Wend Inv. Co., 672 F.2d 1305, 1309 (9th Cir.1982). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. North Star, 720 F.2d at 580. In addition, "[w]hether state or federal law applies in a diversity action is a question of law, which we review de novo." Olympic Sports Prod. v. Universal Athletic Sales Co., 760 F.2d 910, 912 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986). Finally, the district court's construction of state law is also reviewed de novo. Id.; In Re McLinn, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc).
 
 II. The Claims for Damages
 
 7
 In diversity actions, the characterization of an action as derivative or direct is a question of state law. C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1821 (2d ed. 1986); see Lewis v. Chiles, 719 F.2d 1044, 1048-49 (9th Cir.1983) (citing state law in diversity action to determine the nature of the appropriate cause of action). Once state law characterizes the action as either derivative or direct, the applicable procedural rules are determined by federal law. Gadd v. Pearson, 351 F.Supp. 895, 900 (M.D.Fla.1972); see Hanna v. Plumer, 380 U.S. 460, 464-74, 85 S.Ct. 1136, 1140-45, 14 L.Ed.2d 8 (1965); Olympic Sports Prod., 760 F.2d at 913-16. In federal courts, derivative suits are subject to the procedural requirements of Fed.R.Civ.P. 23.1. See Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1208-10 (9th Cir.1980) (affirming district court's dismissal of derivative action for failure to comply with Fed.R.Civ.P. 23.1). Rule 23.1 governs derivative actions " 'to enforce a right of a corporation' when the corporation itself 'failed to enforce a right which may properly be asserted by it' in court." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 533-34, 104 S.Ct. 831, 836-37, 78 L.Ed.2d 645 (1984) (quoting Fed.R.Civ.P. 23.1).
 
 
 8
 Under Montana law, a shareholder can enforce a corporate right in a derivative action if certain conditions are met. Mont.R.Civ.P. 23.1; see S-W Co. v. John Wight, Inc., 179 Mont. 392, 402-03, 587 P.2d 348, 354 (1978). As a general rule, an action enforces a corporate right "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders." 12B W. Fletcher, Cyclopedia of the Law of Private Corporations, Sec. 5911 (rev. perm. ed. 1984) (footnotes omitted); see Annotation, Stockholder's Right to Maintain (Personal) Action Against Third Person as Affected by Corporations' Right of Action for the Same Wrong, 167 A.L.R. 279, 280 (1947) (cited by Mont.R.Civ.P. 23.1 comment). Therefore, if the corporate wrong decreases the value of the corporation's stock, it does not necessarily create a direct cause of action for shareholders. Lewis, 719 F.2d at 1049 (applying Oregon law); W. Fletcher, supra, Sec. 5913; Annot., 167 A.L.R. 279, 280 (1947). The general rule that a shareholder cannot enforce corporate rights in a direct action applies to actions arising out of either contract or tort law. Schaffer v. Universal Rundle Corp., 397 F.2d 893, 896 (5th Cir.1968) (applying Texas law). A direct action can be brought either when there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, or when the shareholder suffers injury separate and distinct from that suffered by other shareholders. W. Fletcher, supra, Sec. 5911; see Schaffer, 397 F.2d at 896.
 
 
 9
 Sax argues that the district court improperly dismissed the damage counts of his amended complaint. He contends that he has an individual cause of action to which Rule 23.1 does not apply because he "gave up his prior job in Indiana, moved to Montana, successfully started World Wide, was refused his contractual right to purchase additional stock and therefore resigned," and because he was unable to sell his stock as a result of the defendants' actions. He cites Jones v. H.F. Ahmanson & Co., 1 Cal.3d 93, 460 P.2d 464, 81 Cal.Rptr. 592 (1969) and Davis v. Ben O'Callaghan Co., 238 Ga. 218, 232 S.E.2d 53 (1977), as support for the argument that he has stated grounds for a direct action. We disagree. The damages sought by Sax for the loss of interest income on his stock investment are incidental to injuries to World Wide and, therefore, are not injuries to Sax personally. See W. Fletcher, supra p. 6, at Sec. 5913; Annot., 167 A.L.R. 279, 280 (1947).
 
 
 10
 Sax alleges that the conspiracy depleted World Wide's assets through corporate mismanagement and diversion of corporate assets. These actions are injuries to the corporation. See W. Fletcher, supra p. 6, at Sec. 5913. Even if the defendants depleted World Wide's assets with the sole purpose of decreasing the value of Sax's stock and destroying his return on his investment, the action would nonetheless be derivative. See id.
 
 
 11
 Sax attempts to invoke the exception to the general rule that actions to redress corporate injuries must be brought derivatively by establishing that his employment contract with World Wide created a special duty between himself and the defendants. However, the employment relationship is irrelevant to the gravamen of Sax's complaint. The acts that allegedly caused Sax's damages occurred after Sax terminated his employment with World Wide and are unrelated to the defendants' breach of the employment agreement. Indeed, Sax does not request damages for World Wide's refusal to sell him the promised stock; rather, the alleged damages are based on the unmarketability of his stock as a result of the defendants' actions. This is an injury suffered by all of World Wide's shareholders and not by Sax alone. Therefore, the injury is incidental to injuries to World Wide and is not an injury to Sax personally.
 
 
 12
 In the third count of his complaint, Sax seeks to extend Montana's tort of bad faith. Montana courts have characterized this tort as the "tort of breach of the implied covenant of good faith and fair dealing." See Nicholson v. United Pac. Ins. Co., 710 P.2d 1342, 1347 (Mont.1985). He alleges that the defendants tortiously violated the implied covenant of good faith. Sax argues that the covenant is implicit in the fiduciary relationship between the defendants and "all other stockholders" of World Wide. However, Sax has not identified a fiduciary duty owed to him that is separate and distinct from that owed to other shareholders and that would allow him to maintain a direct action. The injury he alleges affected the "whole body of [World Wide] stock" and is, therefore, an injury to the corporation.
 
 
 13
 Sax cites Jones v. H.F. Ahmanson & Co. as support for his contention that he can bring a direct action under Montana law. This case is distinguishable. In Jones, the majority shareholders of a closely held corporation contributed their shares to a new corporation in exchange for stock. They sold a portion of their shares in the new corporation for a considerable profit. As a result, the value of the minority shareholders' stock in the close corporation fell. The California Supreme Court permitted the class of minority shareholders to bring a direct action. Unlike the present case, however, the minority shareholders in Jones were excluded from participating in the new corporation and, therefore, were uniquely injured by the acts of the majority shareholders. Moreover, because the majority shareholders were merely selling their stock at a profit, they probably breached no fiduciary duty to the corporation. Therefore, unlike the present case, it is questionable whether the corporation could have collected damages in a derivative suit.
 
 
 14
 Sax also argues that he should be permitted to bring a direct action on the grounds that the defendants control the corporation and that a derivative action would place any judgment into the corporate treasury and therefore under the defendants' control. See Davis, 238 Ga. at 222, 232 S.E.2d at 56; Thomas v. Dickson, 162 Ga.App. 569, 571, 291 S.E.2d 747, 749 (1982), aff'd, 250 Ga. 772, 301 S.E.2d 49 (1983); W. Fletcher, supra p. 6, at Sec. 5911. Although some jurisdictions recognize this exception, it is an undecided question in Montana courts. However, the official comment in the annotations to Mont. Code Ann. Sec. 35-1-514 states that "[t]he need for the derivative remedy is best illustrated when those in control of the corporation are the alleged wrongdoers." (emphasis added). Moreover, we believe that the strong policy in favor of preventing unnecessary litigation countenances against recognizing such an exception in the case of suits brought individually by shareholders[2]. Otherwise, there would be as many suits as there were shareholders in the corporation. See 4 D. Dowling, Mont. Code Annotated (Annotations) 66-67 (1986) ("Redress in the form of a separate suit by each individual shareholder whenever the value of his shares is impaired by a wrong to the corporation would result in unnecessary multiplicity of actions."). Therefore, we refrain from recognizing this exception under the facts of this case. Accordingly, we affirm the district court's dismissal of the damage counts of Sax's complaint because they state a derivative cause of action and Sax failed to comply with the requirements of Fed.R.Civ.P. 23.1.
 
 III. The Claim to Liquidate World Wide Press
 
 15
 Sax also challenges the district court's conclusion that, under the facts alleged in his complaint, Mont. Code Ann. Sec. 35-1-921(1)(a) does not permit him to liquidate World Wide in a direct shareholder action. Sax argues that section 35-1-921(1)(a) permits "a single shareholder [to] seek dissolution for acts by those in control of a corporation which are illegal, oppressive, or fraudulent" and that the statute does not expressly require the suit to be brought derivatively. We agree with the district court's interpretation of section 35-1-921(1)(a)[3] and affirm the dismissal of the fourth count of Sax's complaint.
 
 
 16
 Mont. Code Ann. Sec. 35-1-921(1)(a)(ii) provides that a corporation can be liquidated "in an action by a shareholder when it is established that the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent." We agree with Sax's claim that section 35-1-921(1)(a)(ii) permits a shareholder to bring a direct action to liquidate a corporation but conclude that he must first allege acts that have injured him personally rather than acts that have injured the corporation. See Central Standard Life Ins. Co. v. Davis, 10 Ill.2d 566, 576, 141 N.E.2d 45, 51 (1957) (interpreting Illinois statute permitting liquidation in a direct shareholder action if "the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent," and stating that "[w]e think that if a plaintiff is to be entitled to the drastic relief here sought, it is incumbent upon him to show that he is himself oppressed.").
 
 
 17
 The Montana Supreme Court has applied section 35-1-921(1)(a)(ii) in only two cases that involved direct actions by individual shareholders. See Fox v. 7L Bar Ranch Co., 198 Mont. 201, 645 P.2d 929 (1982); Skierka v. Skierka Bros., Inc., 629 P.2d 214 (Mont.1981). In both cases, the plaintiff alleged acts that injured him personally rather than acts that injured the corporation or the value of its outstanding stock. In Fox, the minority shareholder of a closely held, family-owned corporation brought a direct action as an individual shareholder under section 35-1-921(1)(a)(ii) to liquidate the corporation. 198 Mont. at 202, 645 P.2d at 930. The Montana Supreme Court affirmed the lower court's finding of oppressive conduct by the board of directors on the grounds that the board's conduct was designed to deprive the plaintiff of his share of corporate holdings and profits and he was denied any voice in the management of the corporation. Id. at 208-10, 645 P.2d at 933-34. In Skierka, minority shareholders of a closely held, family-owned corporation brought a direct action against the corporation and the majority stockholders alleging, among other things, that the defendants had acted oppressively toward them in the operation of the corporation. 629 P.2d at 217. The Montana Supreme Court affirmed the lower court's finding of oppression because the defendants had run the corporation to the exclusion of the plaintiffs, denying them any part or voice in the operation, either as directors or as minority stockholders, except for participation in the annual meeting. Id., 629 P.2d at 220-22.
 
 
 18
 Mont. Code Ann. Sec. 35-1-921(1)(a)(iv) provides that a corporation can be liquidated "in an action by a shareholder when it is established that the corporate assets are being misapplied or wasted."[4] Because the misapplication or waste of corporate assets is a corporate injury, the district court correctly concluded that Sax would have to follow the procedure outlined in Fed.R.Civ.P. 23.1 to liquidate World Wide.
 
 
 19
 The district court's interpretation of Mont. Code Ann. Sec. 35-1-921(1)(a) will also reduce the volume of litigation in Montana courts by requiring a shareholder to establish personal injury and not just corporate injury in a direct shareholder action. Because, as discussed above, Sax does not allege conduct that injured him personally but rather conduct that injured the corporation, the district court did not err in dismissing Sax's claim to liquidate World Wide under section 35-1-921(1)(a).
 
 
 20
 For the reasons above, the district court's dismissal of Sax's complaint is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a)
 
 
 [1]
 The district court dismissed Sax's complaint for failure to comply with Fed.R.Civ.P. 23.1. We interpret this decision as a dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6)
 
 
 [2]
 In a direct action brought by injured shareholders as a class, there would be no unnecessary litigation and this policy concern would not arise. However, we need not decide whether this exception would have applied had Sax brought the suit as a class action
 
 
 [3]
 Mont. Code Ann. Sec. 35-1-921(1)(a) (1985) provides that a corporation can be liquidated in an action by a shareholder when it is established that:
 (i) the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock and that irreparable injury to the corporation is being suffered or is threatened by reason thereof:
 (ii) the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent:
 (iii) the shareholders are deadlocked in voting power and have failed for a period which includes at least two consecutive annual meeting dates to elect successors to directors whose terms have expired or would have expired upon the election of their successors: or
 (iv) the corporate assets are being misapplied or wasted.
 
 
 [4]
 Sax does not allege in his amended complaint that the directors are deadlocked, see Mont. Code Ann. Sec. 35-1-921(1)(a)(i) (1985), or that the shareholders of World Wide are deadlocked in voting power, see id. at (1)(a)(iii). Therefore, we need not decide whether Sax could bring a direct action to liquidate World Wide under these sections