Argued and submitted February 26, reversed and remanded November 18, 1992

Tom NOAKES,
individually, Todd Mesher, individually,
and Tom Noakes and Todd Mesher,
ex rel Fishing The West, Inc.,
a dissolved corporation,
*Appellants,*

*v.*

Larry A. SCHOENBORN,
Larry's Sport Center, Inc., an Oregon corporation,
Ethel T. Schoenborn, Kerry Brown,
Richard Marlow, John Abramson,
William Brosseau, Charles Goodlow
and Fishing The West, Inc.,
a dissolved corporation,
*Respondents.*

(89-9-31; CA A67062)

841 P2d 682

Michael J. Gentry, Portland, argued the cause for appellants. With him on the briefs were Tooze, Shenker, Holloway & Duden, Farrand M. Livingston and Parks, Allen, Livingston & Greif, Portland.

Robert T. Scherzer, Portland, argued the cause for respondents. With him on the brief were Grenley, Rotenberg, Laskowski, Evans & Bragg, Portland, and Edward F. Lohman, West Linn.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

Plaintiffs, who are former officers, directors and shareholders of Fishing The West, Inc. (FTW), a dissolved Oregon corporation, appeal from a judgment dismissing their claims against defendants, who are also former officers, directors and shareholders of FTW, FTW itself and Larry's Sport Center, Inc. (LSC). Defendants made three successive motions to dismiss certain claims in plaintiffs' complaint, amended complaint and second amended complaint.[1] The trial court granted all three motions. After the last motion to dismiss was granted, plaintiffs declined to replead and dismissed their other claims for relief. The trial court then entered a final judgment of dismissal. We reverse.

In reviewing a motion to dismiss, we treat as true the allegations in the pleadings, as well as any inferences favorable to plaintiff that can be drawn. *Machunze v. Chemeketa Community College*, 106 Or App 707, 712, 810 P2d 406, *rev den* 312 Or 16 (1991). We first state the allegations common to the claims that were dismissed from the complaint, amended complaint and second amended complaint.[2]

From October, 1982, until November 1, 1984, plaintiff Tom Noakes and defendant Larry Schoenborn participated in a venture to produce and market video programming known as "Fishing the Northwest." LSC, a closely held Oregon corporation controlled by Larry and Ethel Schoenborn, provided the initial financing for the venture. Noakes provided substantial full-time services for compensation that was less than the reasonable value of his services. The venture produced approximately 46 one-half hour episodes of the fishing program and marketed the program to approximately 50 television stations.

On November 1, 1984, FTW was incorporated. Defendants Brown, Abramson, Larry and Ethel Schoenborn

---

[1] In the complaint, plaintiffs asserted a shareholders' derivative claim on behalf of FTW against defendants. In the amended complaint, plaintiffs asserted shareholders' direct injury claims. In the second amended complaint, plaintiffs asserted claims for wrongful "squeeze-out" of plaintiffs as minority shareholders of FTW.

[2] Defendants filed no pleadings in response to any of the complaints. We reject "facts" asserted by defendants on appeal that are not contained in the allegations of the pleadings that were before the trial court.

and plaintiff Noakes were among the initial shareholders and directors.[3] Larry Schoenborn and Noakes were also officers. After incorporation, Noakes continued to devote substantially all of his efforts to the business of FTW for compensation that was less than the reasonable value of his services.

After incorporation, Larry, as president of FTW, operated the business as if it were part of LSC and not a separate entity. Noakes objected to the manner in which Larry operated FTW. Among his objections were that Larry did not permit officers, directors and shareholders to participate in all aspects of FTW's business, that he refused to disclose fully to officers and directors information about the financial relationship between FTW and LSC, that FTW was rendering substantial services to LSC without adequate and timely compensation, that LSC was receiving merchandise and inventory belonging to FTW without full, fair and timely consideration, and that he refused to allow an audit of the financial relationship between FTW and LSC.

Noakes' objections were not allowed to be presented to the board of directors of FTW. He continued to object and, on September 2, 1987, Larry and Ethel and shareholders and directors under their control excluded Noakes from membership on the board of directors, removed him from his position as vice-president and terminated his employment with FTW. These actions were taken in bad faith and were intended to deprive Noakes of his employment and compensation from FTW and to prevent him from inquiring into the relationship between FTW and LSC.

Plaintiff Mesher had been an employee of the unincorporated venture, and he remained as an employee of the corporation until March, 1988. Mesher and defendants Brosseau, Goodlow and Marlow became shareholders in January, 1987. At a shareholders' meeting on February 2, 1988, Mesher supported Noakes' continuing efforts to obtain an audit of the business relationship between FTW and LSC. Soon after that, he was criticized for having an improper attitude toward his employer, and his daytime employment

---

[3] Patric McMenamin also became a shareholder on November 1, 1984, but his shares were repurchased by FTW before the dissolution, and he is not a party to this action.

duties were transferred to an employee subordinate to him. He was assigned new work hours from midnight to 8:00 a.m. each day. Those actions were taken in bad faith and were intended to force Mesher into quitting his employment with FTW, which he did in March, 1988.

On December 29, 1988, Larry and Ethel and shareholders under their control, over the objections of Noakes and Mesher, sold all of FTW's assets to LSC for a price equal to FTW's indebtedness plus $85,769. The assets and business of FTW were reasonably worth $4,850,000. Immediately after the sale, LSC continued to operate the business of FTW as it had operated before the sale. It retained FTW's employees and used the same business location. FTW was dissolved on December 30, 1988.

■ Plaintiffs first claim that the trial court erred in granting defendants' motion to dismiss the shareholders' derivative claim alleged in their original complaint, by which they seek to recover for the corporation the difference between the price paid for the assets of FTW, and their reasonable value. Defendants argue that the dismissal was proper because plaintiffs do not have standing to bring a derivative claim. Defendants claim that plaintiffs sold their shares before dissolution. That allegation does not appear in any of the pleadings. Plaintiffs alleged that they were shareholders until December 30, 1988, when the corporation was dissolved. Defendants agree that dissolution itself does not deprive plaintiffs of standing.[4] Therefore, the issue is whether loss of stock ownership at or after the date of the dissolution prevents bringing and maintaining a shareholders' derivative suit.

In *Metal Tech Corp. v. Metal Teckniques Co.*, 74 Or App 297, 302, 703 P2d 237 (1985), we said:

"Although there are no statutory rules in Oregon governing standing in derivative litigation, we hold that general principles of standing require that, in order to bring a derivative suit, a shareholder must own stock at the time of the alleged

---

[4] Dissolution does not prevent commencement of a proceeding by or against a corporation in its corporate name. ORS 60.637(2)(e). The parties agree that, under the statute, dissolution does not affect existing rights of shareholders. They disagree about whether plaintiffs, who no longer own shares, are "shareholders" for the purposes of determining standing.

wrong and retain ownership for the duration of the litigation. Derivative suits are brought on behalf of the corporation. A person must continue to be a shareholder throughout the litigation to have an incentive to prosecute an action fully and fairly."

That is the general rule. *See, e.g., Lewis v. Chiles*, 719 F2d 1044, 1047 (9th Cir 1983). However, limited exceptions to the general rule arise when a shareholder is involuntarily deprived of stock ownership. The principal exceptions have been tentatively codified by the American Law Institute in *Principles of Corporate Governance* (Proposed Final Draft, March 31, 1992) (the *Principles*).[5] Oregon courts have found earlier drafts of the principles useful in resolving other questions of corporate governance. *See Klinicki v. Lundgren*, 298 Or 662, 681, 695 P2d 906 (1985); *Chiles v. Robertson*, 94 Or App 604, 620, 767 P2d 903, *mod* 96 Or App 658, 774 P2d 500, *rev den* 308 Or 592 (1989).

Section 7.02(a) of the *Principles* contains the rules relating to standing to commence and maintain a derivative action:

"A holder of an equity security has standing to commence and maintain a derivative action if the holder:

"(1) Acquired the equity security either (A) before the material facts relating to the alleged wrong were publicly disclosed or were known by, or specifically communicated to, the holder, or (B) by devolution of law from a prior holder who would have had standing under Subsection (A);

"(2) Continues to hold the equity security until the time of judgment, *unless the failure to do so is the result of corporate action in which the holder did not acquiesce,* and either (A) the derivative action was commenced prior to the corporate action terminating the holder's status, or (B) the court finds that such holder is better able to represent the interests of the shareholders than any other holder who has brought suit;

"(3) Has complied with the demand requirement of § 7.03 (Exhaustion of Intracorporate Remedies: The Demand Rule) or was excused by its terms; and

---

[5] ALI amended and approved the amended version of the Proposed Final Draft of *Principles of Corporate Governance* during the May 12-15, 1992 meeting, subject to the governing council's final approval. None of the sections cited in this opinion was amended at that meeting. 60 USLW 2727 (May 26, 1992).

"(4)   Is able to represent fairly and adequately the interests of the shareholders." (Cross-references omitted; emphasis supplied.)

The comment to section 7.02(a)(2) explains:

"The requirement of a 'continuing interest' in the corporation, which is set forth in § 7.02(a)(2), is premised on the undesirability of permitting a person to serve as plaintiff who lacks any compensatory stake in the potential recovery. The traditional rationale for this rule has been that a former shareholder, who would not benefit from a corporate recovery, might be willing to accept an improper or inadequate settlement. * * * But this understandable policy underlying the 'continuing interest' requirement should not be overextended, and § 7.02(a)(2) sets forth the two principal exceptions to this rule[.] * * * The basic conclusion expressed by § 7.02(a)(2) is that an otherwise eligible shareholder who has been involuntarily eliminated should be permitted to bring and continue the corporate cause of action if unjust enrichment otherwise seems likely to result."

As in *Klinicki v. Lundgren, supra,* and *Chiles v. Robertson, supra,* we find the *Principles* helpful in considering the question and agree with the basic rule expressed in section 7.02(a)(2) and its comment. Applying the rule to the facts alleged in this case, we find that a fair inference to be drawn from plaintiffs' allegations is that they were involuntarily eliminated as shareholders by the majority's decision to liquidate and dissolve FTW. Thus, their failure to hold a continuing interest was the result of corporate action in which they did not acquiesce. Furthermore, plaintiffs are better able to represent the interests of the corporation, primarily because the other shareholders were involved with, or acquiesced in, the wrongdoing. We hold that, under the facts alleged in this case, plaintiffs have standing to bring a derivative action.[6]

■ ■   Plaintiffs next claim that the trial court erred in granting defendants' motion to dismiss the shareholders' direct injury claims from their amended complaint. Defendants argue that the dismissal was proper, because a shareholder has no individual right of action for injuries to the

[6] Defendants argue only that plaintiffs did not meet the continuing interest requirement. No other element of standing is at issue.

corporation. Briefly, the allegations in the sixth and seventh claims for relief are that FTW performed services and transferred merchandise and other benefits to LSC, for which FTW was not fairly compensated, and that defendants ignored demands for an investigation and an audit of the transactions between FTW and LSC. Plaintiffs allege that defendants sold FTW's assets to LSC for a grossly inadequate price. They allege that those actions "were for the purpose, and had the effect, of diminishing the value of FTW" and, consequently, of Noakes' and Mesher's interests in FTW. A wrongful act that diminishes the value of stock and thereby injures shareholders only indirectly, by reason of the prior injury to the corporation, is derivative. The general rule is that such claims must be brought in the name of the corporation. *Weiss v. Northwest Accept. Corp.*, 274 Or 343, 348, 546 P2d 1065 (1976); *Smith v. Bramwell*, 146 Or 611, 615, 31 P2d 647 (1934).

■ However, a well-recognized exception is that, in a closely held corporation, minority shareholders may bring a direct action, rather than a derivative action, if they allege harm to themselves distinct from the harm to the corporation or a breach of a special duty owed by the defendant to the shareholders. *Schumacher v. Schumacher*, 469 NW2d 793, 798 (ND 1991); *see also Weiss v. Northwest Accept. Corp*, *supra*, and *Smith v. Bramwell, supra*. In addition to the allegations summarized above, plaintiffs alleged that the actions taken by defendants breached fiduciary duties owed by majority shareholders to minority shareholders.

■■ Majority shareholders of a closely held corporation owe the minority fiduciary duties of loyalty, good faith, fair dealing and full disclosure. *Delaney v. Georgia-Pacific Corp.*, 278 Or 305, 310, 564 P2d 277 (1977); *Chiles v. Robertson, supra*, 94 Or App at 619. O'Neal's treatise on closely held corporations says:

> "In the past, some courts permitted majority shareholders to exercise, without restriction other than the avoiding of fraud, whatever powers they had as controlling shareholders under the statutes and the corporation's charter and bylaws; and further, they treated the fiduciary duties of the directors as running only in favor of the corporation, not the minority shareholders. The view that the controlling shareholders and the directors do not owe fiduciary duties to

minority shareholders is outmoded, at least as applied to attempts to eliminate minority shareholders from the enterprise or deprive them of their proportionate powers and rights without a just equivalent.

"Where several owners carry on an enterprise together (as they usually do in a close corporation), their relationship should be considered a fiduciary one similar to the relationship among partners." O'Neal & Thompson, *O'Neal's Close Corporations* § 8.08(3) (3d ed 1987). (Footnotes omitted.)

When the majority shareholders of a closely held corporation use their control over the corporation to their own advantage and exclude the minority from the benefits of participating in the corporation, absent a legitimate business purpose, the actions constitute a breach of their fiduciary duties of loyalty, good faith and fair dealing. Because actions such as those alleged in this case result in both derivative and individual harm, an action brought by minority shareholders may proceed as a derivative or a direct action. *See Watson v. Button*, 235 F2d 235 (9th Cir 1956).

■     Finally, plaintiffs claim that the trial court erred in granting defendants' motion to dismiss the "squeeze-out" claims alleged in their second amended complaint. Defendants argue that the dismissal was proper, because a shareholder has no individual right of action for injuries to a corporation. Defendants misconstrue the nature of the allegations. The gravamen of plaintiffs' claim is that defendants, as majority shareholders and directors, deprived them of their right to participate in the business of FTW, that is, had "squeezed them out" of the corporation. Plaintiffs alleged, in part, that

"[a]s a result of the actions of Noakes and Mesher in expressing their concerns [about Schoenborn's manner of operating the business of FTW and the financial transactions between FTW and LSC] and in order to preclude Noakes and Mesher from participating in the continued growth and financial success of FTW, one or more of the defendants except FTW decided to exclude Noakes and Mesher from all future participation in FTW by selling all of the assets of FTW to [LSC] and liquidating FTW."

We have already discussed the fiduciary duties owed by majority shareholders to minority shareholders. O'Neal describes squeeze-outs through the use of dissolution:

"Statutes permitting dissolution of a corporation on the vote of a specified percentage of the shareholders * * * open the way for majority shareholders to bring about the dissolution of a company, the liquidation of its assets, and the acquisition of the assets by a concern which they own. As Professor George D. Hornstein said over 40 years ago, voluntary dissolution can be used to squeeze out small shareholders 'where the corporation is obviously earning money and prospering in every way, and it is proposed, not to discontinue the business, but to turn it over to a new corporation with a slightly different name but with the same powers and some of the original owners.' Indeed the purchasing company may continue the business with the same employees and at the same location." O'Neal and Thompson, *O'Neal's Oppression of Minority Shareholders* § 5.21 (2d ed 1991). (Footnotes omitted.)

*See also* Hornstein, *Voluntary Dissolution — A New Development in Intracorporate Abuse*, 51 Yale L Rev 64 (1941). That describes the circumstances alleged in this case precisely.

Oregon recognizes the squeeze-out theory. In *Browning v. C & C Plywood Corp.*, 248 Or 574, 434 P2d 339 (1967), the majority shareholders authorized an increase in capital stock, with the result that the plaintiff, who could not afford to exercise his pre-emptive right to purchase new stock, was squeezed out. The court said:

"[In] O'Neal & Derwin, Expulsion or Oppression of Business Associates, 'Squeeze-Outs in Small Enterprises,' (1961), * * * [t]he authors examine the reluctance of the courts to interfere in intra-corporate disputes but also find that courts have given relief when the purpose of the increased stock issue is only for the benefit of the majority and serves no corporate purpose. In the instant case, the only demonstrable purpose served by the increase of stock was to provide the tools with which to drastically reduce the interest of Browning in the corporation. We are convinced by the evidence that this was done to eliminate [the plaintiff] as a stockholder and that this purpose was wrongful and oppressive." 248 Or at 581.

*See also Baker v. Commercial Body Builders*, 264 Or 614, 507 P2d 387 (1973).

■ Liquidation and dissolution as a "squeeze out" tactic may be wrongful and oppressive, at least in the absence of

legitimate business reasons for liquidation and dissolution and where the majority shareholders engage in disloyal and unfair actions.[7] Decisions from other courts express disapproval of liquidation and dissolution to "squeeze-out" minority shareholders. The Supreme Court of California commented that

> "[s]hareholders representing 50 percent of the voting power do not have an absolute right [under the statute] to dissolve a corporation. Thus, they have no right to dissolve a corporation to defraud the other shareholders * * *, to 'freeze out' minority shareholders * * * or to sell the assets of the dissolved corporation at an inadequate price. * * * There is nothing sacred in the life of a corporation that transcends the interests of its shareholders, but because dissolution falls with such finality on those interests, above all corporate powers it is subject to equitable limitations." *In re Security Finance Co.*, 49 Cal 2d 370, 376, 317 P2d 1 (1957).

A federal court strongly condemned a similar liquidation plan:

> "To say that majority stockholders may dissolve a corporation and proceed to take over the business and principal assets for themselves while at the same time forcing the minority to take mere cash for their interests, the payments to be based on a valuation made by the majority, would be to confer upon the majority the power to confiscate the minority interest, thus depriving the minority shareholders of their interest in an existing business with its attendant possibilities of growth and appreciation in value, an interest which may be worth much more than the present cash value of the minority shares. Such should not be permitted." *Kellogg v. Georgia-Pacific Paper Corp.*, 227 F Supp 719, 724 (WD Ark 1964).

*See also Kavanaugh v. Kavanaugh Knitting Co.*, 226 NY 185, 123 NE 148 (1919); *Theis v. Spokane Falls Gaslight Co.*, 34 Wash 23, 74 P 1004 (1904); *Lebold v. Inland Steel Co.*, 125 F2d 369 (7th Cir 1941), *cert den* 316 US 675 (1942), *mod* 136 F2d 876 (7th Cir 1943), *cert den* 320 US 787 (1943).

---

[7] We do not suggest that dissents among shareholders in a closely held corporation may not be a legitimate business reason for dissolution; but in that situation, the majority shareholders must comply fully with their fiduciary duties to the minority.

Taking the facts alleged in the pleadings and their reasonable inferences as true, as we must, defendants liquidated and dissolved FTW for the purpose of eliminating and appropriating the business of FTW for themselves at such a grossly inadequate price that, on its face, the transaction appears to be a breach of the majority's duties of loyalty, good faith and fair dealing. The allegations plead direct injuries to plaintiffs, not just injury to the corporation. The squeeze-out claims should not have been dismissed.

Reversed and remanded.