Alan KAHN, et al., Plaintiffs,

v.

Robert A. SPROUSE, II,
et al., Defendants.

Civ. No. 93–372–JO.

United States District Court,
D. Oregon.

Dec. 15, 1993.

---

**424**

Henry Kantor, Kantor & Sacks, Portland, OR, William B. Hirsch, William Bernstein, Elizabeth Joan Cabraser, Lieff Cabraser & Heimann, San Francisco, CA, for plaintiffs.

William F. Martson, Jr., Scott G. Seidman, Tonkon Torp Galen Marmaduke & Booth, Portland, OR, Teresa A. Maginn, Brobeck Phleger & Harrison, San Francisco, CA, for defendants.

*OPINION AND ORDER*

ROBERT E. JONES, Judge:

This matter is before the court on defendants' motion for summary judgment. The limited issue for purposes of this motion is whether plaintiffs have standing to assert a direct action as shareholders, rather than a derivative action on behalf of the corporation. No discovery has been conducted in this case.

Defendants are the five directors who constituted the company's board of directors during the time period in question. Members of the Sprouse family, including three of the named defendants, own or control approximately 78% of the company's voting stock and 5% of the nonvoting stock. The Sprouse family shareholders also are parties to a shareholder stand-together agreement, which gives defendant Robert A. Sprouse, II, CEO and president of the company during a portion of the time period in question, complete authority to approve or oppose any attempt to take over the company.

The allegations revolve around the failed efforts of Robert Bisno to purchase the company, beginning in 1987. In the spring of 1991, the Board and the shareholders approved a sale to Bisno for approximately $17/share. However, the sale fell through when the lenders backed out. Plaintiffs contend that financing fell through because defendants falsified financial reports; defendants contend that Bisno misrepresented the availability of financing. Following this failed merger, Bisno made several other offers to acquire the company, each of which were rejected.

In March 1992, plaintiff Waterside Partners wrote to the company demanding that the company bring a derivative action against these same defendants for their actions in connection with the $17/share merger and for bad faith refusal to accept Bisno's subsequent offers to purchase the company. A special investigative committee was appointed, which concluded that plaintiff's demand should be rejected. Plaintiffs then brought this action.

Plaintiffs allege that all defendants breached fiduciary duties that they owed as di-

rectors to the company's shareholders. Plaintiffs also allege that the Sprouse defendants have breached fiduciary duties that they owed as majority shareholders to minority shareholders. Specifically, plaintiffs contend:

> In abuse of their power and responsibility, defendants, after putting the Company up for sale, negotiated in bad faith, falsified records and then tried to hide the fact from discovery, and rejected legitimate offers to buy the company which were clearly in the interests of the minority to accept, simply because they wanted to protect and preserve their positions of control and dominance. In addition, defendants specifically dealt with [Bisno's company] in bad faith to the detriment of the minority, out of personal dislike for [Bisno] and in order to prevent [Bisno's company] from discovering their illegal and deceptive accounting practices.

Defendants argue that, because all alleged injuries are shared equally by all shareholders, any right of action based on defendants' actions belongs to the corporation, not to plaintiffs as individual shareholders.

## STANDARDS

■ Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

■ The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the nonmoving party. *Id.* at 630–31.

## DISCUSSION

■ Defendants contend that plaintiffs have no viable claims which can be asserted in a direct action. A shareholder can bring a direct action only in limited circumstances:

> either when there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, or when the shareholder suffers injury separate and distinct from that suffered by other shareholders.

*Sax v. World Wide Press, Inc.,* 809 F.2d 610, 614 (9th Cir.1987).

### A. *Special Duty of Majority Shareholders of Close Corporation Does Not Apply*

■ First, plaintiffs assert that this case involves a special duty. In the case of "close" corporations, a special duty exists between "those in control of corporate affairs," including the majority shareholder and corporate directors, and the minority shareholders.[1] *Zidell v. Zidell, Inc.,* 277 Or. 413, 418, 560 P.2d 1086 (1977); *Noakes v. Schoenborn,* 116 Or.App. 464, 471, 841 P.2d 682 (1992). The duty is one of "loyalty, good faith, fair dealing and full disclosure." *Chiles v. Robertson,* 94 Or.App. 604, 619, 767 P.2d 903 (1989). When an officer or majority shareholder takes action to his or her own benefit at the expense or exclusion of the minority, the action constitutes a breach of fiduciary duty. *E.g., Noakes,* 116 Or.App. at 472, 841 P.2d 682.

■ Plaintiffs concede that Sprouse–Reitz does not fit the traditional definition of a close corporation.[2] However, plaintiffs ar-

---

1. Defendants place great emphasis on an alleged "distinction between shareholders and directors." In the context of the close corporation, however, Oregon law places the same fiduciary duties on majority shareholders and directors where minority shareholders are concerned.

2. As defendants point out, Sprouse–Reitz has none of the characteristics of a close corporation:

gue, the company is not a "classic" public corporation either. Plaintiffs urge the court to extend the special duty because Sprouse–Reitz is "in essence a close corporation, controlled and dominated by the Sprouse family defendants."

I decline to extend the close corporation exception to an open market situation such as this. The reason for the exception is sound only in situations in which minority shareholders can not easily remove themselves from their shares by selling on an open market. Plaintiffs' first theory is rejected.

### B. Enhanced Duty of Directors in Take-over Situations Does Not Apply and Does Not Provide Direct Action

■ Plaintiffs' second theory is based on the enhanced duty directors owe shareholders in takeover situations. In *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985), a minority shareholder making a hostile tender offer challenged defensive measures taken by the board to thwart the takeover attempt. The Delaware Supreme Court, out of concern that directors may adopt such defensive measures in order to entrench themselves in office, recognized an enhanced duty which requires directors to show that they reasonably perceived a threat to the policy or effectiveness of the corporation and that any defensive tactics adopted were reasonable in relation to the threat posed. If this threshold showing is not made, the actions of the directors will not be protected by the business judgment rule. *Id.* at 954–55.

Plaintiffs contend that defendants cannot meet the threshold inquiry established in *Unocal.* More importantly for purposes of this motion, plaintiffs contend that *Unocal* provides the basis for a direct action based upon breach of fiduciary duty. I disagree for two reasons.

First, the *Unocal* threshold does not apply to this case. The *Unocal* threshold is triggered only when directors adopt defensive measures; it does not apply to board responses to merger proposals. *See TW Services, Inc. v. SWT Acquisition Corp.*, 1989 WL 20290 (Del.Ch.1989). Plaintiffs have not identified any defensive measures taken by defendants; they allege only rejected merger proposals.

The court in *TW Services* discussed the distinctive legal treatment of "these functionally similar forms of change in control transactions—mergers and public tender offers." *Id.* at *10. The distinction lies in the role the board plays in the two situations. A board which opposes a merger does not need to adopt defensive measures. The board need only say "no," which ends the inquiry, because the board's agreement is *required* before a merger proposal can be referred to the shareholders for a vote. *See* O.R.S. 60.481 et seq. In this situation, a board is required to use its business judgment to decide whether the merger proposal should be recommended to the shareholders for a vote, and the board is entitled to the protection of the business judgment rule.

A tender offer, on the other hand, does not involve the board unless the board *chooses* to be involved by placing obstacles in the path of the offer. It is in this instance that the board's motives become suspect; the inference being that the board has gone the extra mile and taken unsolicited action in order to entrench itself. As defendants point out, saying "no" to a merger proposal is a far cry from adopting defensive measures designed to impede or defeat a change in control of the company. Saying "no" does not, for example, prevent the party seeking control from making a tender offer for the company's shares and bypassing the board altogether. The cases relied upon by plaintiffs involve such defensive measures as poison pills, golden parachutes, lock-ups and self-tender of-

(1) a small number of shareholders—there are over 500; (2) capital stock that is not traded publicly—Sprouse–Reitz stock is traded on the over-the-counter market and its prices are quoted on NASDAQ; and (3) the lack of a formal separation between ownership and management—during the alleged class period, two of the

five directors were not shareholders, and two of the remaining three directors were not officers or employees of the company. *See* O'Neal's Close Corporations § 1.02 (3d ed.); 2 Advising Oregon Businesses § 32.1; *Estate of Schroer v. Stamco Supply, Inc.*, 19 Ohio App.3d 34, 482 N.E.2d 975, 978 (1984).

fers. If defendants had taken the extra step of adopting such a defensive measure in order to keep Bisno from taking further steps toward control of the company, *Unocal*'s concerns would apply.

Second, *Unocal* is not grounds upon which to assert a direct action. Neither *Unocal* nor any Delaware case following *Unocal* has changed the nature of shareholder claims for breach of fiduciary duty. *Unocal* is concerned with the business judgment rule, not the distinction between direct and derivative actions. A shareholder asserting a direct action still must show either a special duty, such as a contractual duty, or an injury separate and distinct from that suffered by other shareholders. *See O'Neill v. Church's Fried Chicken, Inc.*, 910 F.2d 263, 267 (5th Cir.1990) ("Any misconduct on the part of the directors in reacting to a tender for all the corporation's stock will harm all stockholders, as such, in proportion to their share of ownership. Thus, it has been recognized that an action such as [plaintiff's] must be brought as a derivative claim.")

## C. *Plaintiffs' Claims Are Derivative*

Because plaintiffs cannot establish a special duty in this case, the dispositive issue becomes whether plaintiffs' injury is "separate and distinct from that suffered by other shareholders." *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 614 (9th Cir.1987). The case of *Moran v. Household International, Inc.*, 490 A.2d 1059 (Del.Ch.1985), illustrates the derivative nature of plaintiffs' claims.

The plaintiffs in *Moran* asserted a claim that the directors "manipulated the corporate machinery to entrench themselves in office by restricting the shareholders' right to make use of the proxy machinery to gain control of Household." *Id.* at 1070. The court held that, because plaintiffs were not engaged in a proxy battle, the restriction affected all shareholders, and the claim was derivative. *Id.* The plaintiffs in *Moran* also claimed that the directors manipulated the corporate machinery to deprive shareholders of their "right to receive and consider takeover proposals." *Id.* The court held that this claim was derivative as well:

Although the Plan may indeed have the effect of limiting a shareholder's ability to consider takeover proposals, shareholders do not possess a contractual right to receive takeover bids. The shareholders' ability to gain premiums through takeover activity is subject to the good faith business judgment of the board of directors in structuring defensive tactics. Absent an allegation that the Rights Plan directly restricts transferability, there is no deprivation of a distinct contractual right of the shareholders. Because plaintiffs do not allege any distinct injury from the alleged restriction on their ability to receive takeover bids, this claim may be brought derivatively on behalf of Household.

*Id.*

■ Similarly, plaintiffs allege no unique injury or interference with a contractual right. As was stated in *Moran*, plaintiffs have no contractual right to receive merger proposals. If plaintiffs' allegations of breach of fiduciary duty are true, the resulting injury is common to all shareholders, including defendants, and the harm accrues to the corporation. Plaintiffs simply cannot allege a distinct injury from defendants' refusal to sell the company. The directors' duties of care extend to the corporation and all of its shareholders; plaintiffs have no unique standing as minority shareholders to have their interests considered in isolation or to the exclusion of the majority shareholders. If the sale was indeed in the best interest of the corporation, the sale was also in the best interest of each and every shareholder.

## CONCLUSION

For the reasons set forth in this opinion, plaintiffs' claims can only be asserted, if at all, as derivative claims. Defendants' Motion for Summary Judgment (# 49) is Granted.