Argued and submitted May 10, reversed and remanded July 26, petition for review denied October 3, 1995 (322 Or 168)

Marcus C. WULF,
*Appellant,*

*v.*

Marvis R. MACKEY
and Dennis L. Hanson,
*Respondents.*

(93C-10928; CA A85016)

899 P2d 755

Robert D. Bulkley, Jr., argued the cause for appellant. With him on the briefs were William N. Mehlhaf and Markowitz, Herbold, Glade & Mehlhaf, P.C.

Hunter B. Emerick argued the cause for respondents. With him on the brief was Saalfeld, Griggs, Gorsuch, Alexander & Emerick, P.C.

Before Deits, Presiding Judge, and Landau and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff Marcus Wulf appeals, assigning error to the trial court's allowance of defendants' motion for summary judgment against his claim for breach of fiduciary duty, arising out of a dispute over the management and demise of a closely held corporation. We reverse and remand.

In 1991, plaintiff and defendants Marvis Mackey and Dennis Hanson formed D2M Corporation, a closely held corporation, for the purpose of purchasing all the outstanding stock of Fitts Fish & Poultry Market, Inc. (Fitts).[1] Plaintiff and each defendant owned one-third of the shares of D2M, and each served as a director with equal control over the corporation.

D2M financed its acquisition of the Fitts stock through Key Bank, which loaned D2M $450,000 of the $600,000 purchase price. Plaintiff, defendants and their wives, and defendants' accounting firm, Mackey, Hanson & Co., guaranteed the loan. The guarantees were, in turn, separately secured by deeds of trust on defendants' residences and a tri-plex owned by plaintiff.

After the purchase, D2M and Fitts merged, and plaintiff and defendants each became a one-third owner of Fitts. The merger agreement provided that, after the merger, the Fitts bylaws would control. Unaware that the Fitts bylaws provided for only one director, plaintiff and defendants continued as officers and directors of Fitts, with equal control over corporate affairs. Shortly after the merger, however, defendants began disregarding plaintiff's advice pertaining to the management of Fitts, often telling him that he did not have adequate business knowledge and using their majority control to override his concerns.

Some time before July 1992, defendant Mackey told Fitts's corporate counsel, Jennings, that the relationship between plaintiff and defendants had deteriorated and that the parties could not agree about their respective roles in the

---

[1] The facts are presented in the light most favorable to plaintiff, as the non-moving party. *Willamette Dental Group v. Oregon Dental Service*, 130 Or App 487, 489, 882 P2d 637 (1994).

management of Fitts. Mackey also alluded to the possibility of removing plaintiff from Fitts's board of directors.

In early July 1992, Jennings told defendants that he had discovered that the original Fitts corporate bylaws allowed only one director. At the July 9, 1992, annual meeting, Jennings and defendants informed plaintiff of that discovery and proposed that, pending amendment of Fitts's bylaws to provide for a three-member board, they remedy the problem by electing one director for Fitts. Defendants approved that suggestion and elected Mackey as the sole director. Plaintiff voted for himself.

After the annual meeting, Jennings drafted amended bylaws for Fitts that provided for three directors. Mackey objected to the draft and, instead, proposed that there be between one and five directors, with the board to determine the exact number. Mackey, as the sole board member, decided that there should be only one director — *i.e.*, the position that he then held.

In September 1992, defendants informed plaintiff that they had discovered a $176,000 inventory shortage. Thereafter, defendants began negotiating a sale of Fitts stock and assets to Pacific Seafood, one of their competitors. Defendant Mackey told plaintiff that the agreement would include a cash payment of $150,000 to the shareholders. However, before securing a binding commitment from Pacific Seafood, defendants gave it control of Fitts, allowing Pacific Seafood access to "inside information" that it then used to reduce its purchase offer. Ultimately, Fitts sold only its assets, but not its stock, to Pacific Seafood in exchange for (1) the satisfaction of Fitts's loans from Key Bank and (2) the release of the personal guarantees of, and security pledged by, plaintiff, defendants and their wives, and Mackey, Hanson & Co. The sale generated no cash payment to the shareholders. After the sale, Fitts filed Chapter 7 bankruptcy.

Plaintiff then filed an action against defendants for breach of fiduciary duty and tortious interference with business relations. Plaintiff alleged that defendants, as majority shareholders, breached fiduciary duties owed to plaintiff as the minority shareholder by, *inter alia*:

"(a)   refusing to share with plaintiff information and knowledge relevant to the health, welfare and business activities of the corporation;

"(b)   removing plaintiff as a director of the corporation and failing to amend the bylaws as agreed to permit plaintiff's continued participation on the board for the purpose of depriving plaintiff of knowledge of defendants' activities and attempting to prevent their occurrence."

Defendants moved for summary judgment against plaintiff's breach of fiduciary duty claim.[2] They argued that, as a matter of law, plaintiff had to assert that claim derivatively, on behalf of Fitts and, thus, could not assert that claim directly against them. The court granted partial summary judgment and entered judgment pursuant to ORCP 67 B.

On appeal, plaintiff assigns error to the court's allowance of summary judgment against his breach of fiduciary duty claims. Plaintiff invokes *Noakes v. Schoenborn*, 116 Or App 464, 841 P2d 682 (1992), for the proposition that he is entitled to bring his breach of fiduciary duty claim directly against defendants, rather than derivatively on behalf of the corporation.

In *Noakes*, the plaintiffs and the defendants were former directors, officers, and shareholders of Fishing The West, Inc., (FTW) a closed corporation. Shortly after FTW's incorporation, the defendants began operating FTW as though it were part of another closed corporation, LSC, which they (and not the plaintiffs) controlled. The defendants excluded the plaintiffs from business decisions, refused to disclose information regarding the financial relationship between FTW and LSC, and allowed LSC to have merchandise and inventory belonging to FTW without fair consideration. When the plaintiffs objected to that conduct, the defendants excluded them from the board of directors and ultimately terminated their employment. Finally, the defendants sold FTW's assets to LSC for substantially less than fair market value and dissolved FTW.

The plaintiffs brought derivative and direct claims for breach of fiduciary duty against the defendants. The trial

---

[2] Defendants also moved for summary judgment against plaintiff's tortious interference claim. The court denied that motion.

court granted the defendants' motions to dismiss, and we reversed:

> "[I]n a closely held corporation, minority shareholders may bring a direct action, rather than a derivative action, if they allege harm to themselves distinct from the harm to the corporation or a breach of a special duty owed by the defendant to the shareholders. * * *
>
> "Majority shareholders of a closely held corporation owe the minority fiduciary duties of loyalty, good faith, fair dealing and full disclosure. * * * When the majority shareholders of a closely held corporation use their control over the corporation to their own advantage and exclude the minority from the benefits of participating in the corporation, absent a legitimate business purpose, the actions constitute a breach of their fiduciary duties of loyalty, good faith and fair dealing. Because actions such as those alleged in this case result in both derivative and individual harm, an action brought by minority shareholders may proceed as a derivative or a direct action." *Id.* at 471-72 (citations omitted).

Thus, *Noakes* prescribes a disjunctive test for direct actions: minority shareholders may bring direct, rather than derivative, actions if they allege either "harm to themselves distinct from the harm to the corporation *or* a breach of a special duty owed by the defendant to the shareholders." *Id.* at 471 (emphasis supplied).

Here, defendants argue that plaintiff did not meet *Noakes's* first disjunctive test, *i.e.*, that he failed to establish personal harm distinct from harm to the corporation. Defendants further argue that plaintiff did not meet *Noakes's* second disjunctive test because, regardless of whether defendants breached any "special duty" they owed to plaintiff as a minority shareholder, and regardless of whether plaintiff was damaged by such a breach, he failed to prove that they actually personally profited from their alleged breach. We conclude that plaintiff's breach of fiduciary duty claim was sufficient under *Noakes'* second test. Accordingly, we need not, and do not, address defendants arguments relating to *Noakes's* distinct harm test.

Contrary to defendants' assertion, *Noakes* and other cases defendants cite[3] do not require plaintiff to plead and

---

[3] *See, e.g., Schumacher v. Schumacher,* 469 NW2d 793 (ND 1991); *Crosby v. Beam,* 47 Ohio St 3d 105, 548 NE2d 217 (1989).

prove that "[defendants] personally gained or profited at his expense." Although the breaches of fiduciary duty in those cases produced pecuniary gains, those cases do not hold that such gain is a prerequisite to the maintenance of a direct action. Moreover, to imply such a requirement would produce anomalous results, *i.e.*, defendants who were so bungling in their attempts to freeze out minority shareholders that they did not actually profit from such efforts, would be immune from direct actions, regardless of the harm they caused minority shareholders.

Finally, defendants argue that, in all events, plaintiff may not bring a direct action against them because to do so would prejudice Fitts's creditors and unfairly expose defendants to a multiplicity of actions. Defendants rely on section 7.01(d) of the American Law Institute's (ALI) *Principles of Corporate Governance: Analysis and Recommendations* (1994) (*Principles*):

> "In the case of a closely held corporation * * *, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons."

Even if we were to accept the ALI's statement as persuasive, defendants' reliance on that provision is misplaced. By its terms, section 7.01(d) does not describe a barrier to direct shareholder actions; instead, it describes a mechanism by which a court "may treat an action raising *derivative* claims as a direct action." (Emphasis supplied.) Here, plaintiff has sufficiently alleged a nonderivative claim under *Noakes*; consequently, the formulation articulated in section 7.01(d) of the *Principles of Corporate Governance* is inapposite.

Reversed and remanded.