Argued and submitted September 28, 1998, reversed and remanded in part; otherwise affirmed April 21, petition for review denied July 27, 1999 (329 Or 287)

# Norman C. LOCATI
## and R. Wayne Fields,
### *Appellants,*

*v.*

# Bradley R. JOHNSON,
## Richard A. Elder and Univend, Inc.,
## an Oregon corporation,
### *Respondents.*

## (CCV95-12356; CA A98911)

980 P2d 173

James R. Cartwright argued the cause and filed the briefs for appellants.

Scott G. Seidman argued the cause for respondent Bradley R. Johnson. With him on the brief was Tonkon Torp LLP.

No appearance by respondent Richard A. Elder.

No appearance by respondent Univend, Inc.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, S. J.*

_____
* Retired February 28, 1999.

**WARREN, S. J.**

Plaintiffs are minority shareholders of defendant Univend, Inc. They allege that defendants Bradley Johnson and Richard Elder, who together own a majority of the shares, breached their fiduciary duties as controlling shareholders when they agreed to give Crystal Lite Manufacturing, Inc., a corporation that Johnson and his wife own, a 10-year exclusive license to a patent that was Univend's only significant asset. Before the trial began, the trial court held that defendants could breach fiduciary duties to plaintiffs Johnson and Elder only if *both* acted from pecuniary self-interest or other improper motive. It then heard the evidence on that point and concluded that a reasonable juror could not find that Elder acted from such a motive. Plaintiffs appeal from the subsequent dismissal of the case as to both defendants. We reverse as to Johnson and affirm as to Elder.

We state the facts most favorably to plaintiffs, the nonmoving parties. Elder invented a machine that would dispense newspapers a single copy at a time. Plaintiffs joined with him to complete developing the machine and to market it when ready. All three jointly received a patent to a modification of Elder's original concept; they assigned the patent to Univend. Univend then arranged with Crystal Lite to work on the original manufacturing of the prototype machines. Johnson became interested in the machine and eventually became a shareholder in Univend.[1] At the time of the events involved in this case, Johnson owned 22 percent of the company, Elder owned 37.5 percent, and plaintiffs owned 10 percent each. The owners of the remaining 20.5 percent are not parties to this case. Before August 1995, plaintiffs and Elder were the officers and directors of Univend.

Crystal Lite continued to work on building the machines after Johnson became a shareholder in Univend, and Univend fell behind in its payments for that work. In May 1995, Crystal Lite sued Univend for the $40,000 that

---

[1] In their briefs, the parties discuss their varying positions on whether Johnson fully performed the agreement under which he received his shares. Those disputes are not relevant to the issues before us, and we therefore do not consider them.

Univend owed. Johnson intended to recover a judgment and then execute on Univend's assets, including the patent, with the result that Crystal Lite rather than Univend would own the invention. In July, as part of its answer to Crystal Lite's lawsuit, Univend filed a third-party complaint against Johnson, in which it sought to enforce an alleged agreement by which Johnson, as part of his purchase of Univend shares, would provide Univend with a $100,000 line of credit. Johnson thereafter talked with Elder, telling him that they should combine their voting power, which together was a majority of all shares, to require Univend to settle the case on Johnson's terms. Elder agreed to cooperate with Johnson.

Because there had not been an annual shareholders' meeting for over a year, Johnson and Elder called one for August 29. Before the meeting, Elder gave Johnson an irrevocable proxy authorizing Johnson to vote Elder's shares at the meeting.[2] Despite the proxy, Elder personally appeared and voted his shares. Johnson and Elder voted to require Univend to enter into a settlement by which Univend gave Crystal Lite a 10-year exclusive license to the patent in return for a payment of $1 for each machine sold; in return, Crystal Lite dismissed its claims against Univend. They also chose a board of directors that consisted of Johnson, Elder, and plaintiff Locati. Univend has not conducted any business since the meeting.

Plaintiffs assert that Johnson and Elder, as controlling shareholders, owed them, as minority shareholders, the fiduciary duties of loyalty, good faith, full disclosure, and fair dealing and that their actions at the annual meeting breached those duties. Before trial, the court held that, in order for plaintiffs to prove that claim, they had to show that *both* Johnson and Elder acted "for their own pecuniary or other improper purpose." The court concluded that it was not sufficient to show only that they acted together in a way that harmed the minority shareholders.[3] Because it concluded,

---

[2] The parties do not raise any questions about the irrevocability of the proxy. *See* ORS 60.231(4).

[3] *Elder did not appear at trial or on appeal.* In essence, under the trial court's ruling *Elder's* alleged lack of pecuniary self-interest or other improper motive would permit *Johnson* to avoid liability for actions in which he unquestionably had a pecuniary self-interest, even though Johnson induced Elder to act in concert with him with regard to those actions.

from plaintiff's offer of proof, that there was insufficient evidence that Elder acted for any improper purpose, it dismissed the case against both defendants.[4]

Plaintiffs' arguments on appeal raise two related questions, although the parties do not always keep them distinct. The first question is whether Johnson and Elder are controlling shareholders who owe fiduciary duties to the minority rather than two shareholders who just happened to vote the same way on a particular occasion. The second question is whether, if Johnson and Elder do owe fiduciary duties, they could breach those duties if Elder did not benefit from the breach. A subsidiary issue on the second question is whether each member of a group of controlling shareholders owes separate fiduciary duties to the minority, so that one member can breach those duties even though another does not. We first consider whether defendants constituted a controlling group that owes fiduciary duties.

■■ We have held in a number of cases that controlling shareholders of a corporation owe fiduciary duties to the minority. Under those cases, a shareholder does not necessarily have to own a majority of the stock to be a controlling shareholder. Rather, a small group of shareholders who together own a majority and who act in concert may be controlling shareholders and thus may have fiduciary duties to shareholders who are not in the controlling group. *See, e.g., Wulf v. Mackey*, 135 Or App 655, 899 P2d 755 (1995), *rev den* 322 Or 168 (1995); *Noakes v. Schoenborn*, 116 Or App 464, 472, 841 P2d 682 (1992). Indeed, one 50 percent owner can be a controlling shareholder with fiduciary duties to the other 50 percent owner. *See Delaney v. Georgia-Pacific Corp.*, 278 Or 305, 311, 564 P2d 277 (1977); *Lee v. Mitchell*, 152 Or App 159, 174-75, 953 P2d 414 (1998).

■ Our cases have generally focused on whether controlling shareholders breached their fiduciary duties, not on what made them controlling shareholders. In deciding

---

[4] It is not entirely clear from the trial court's statements whether it concluded that the absence of an improper purpose meant (1) that Johnson and Elder were not controlling shareholders who had fiduciary duties or (2) that, while Johnson and Elder may have had fiduciary duties, they had not breached them. We address both issues in this opinion.

whether the shareholders breached their duties of loyalty, good faith, and fair dealing, we have at times suggested that one issue is whether the controlling shareholders used their control over the corporation for their own advantage. *See Noakes*, 116 Or App at 472. On the other hand, we have left open whether it is sufficient to show that it was reasonably foreseeable that a director's actions would harm the plaintiffs in their status of shareholders without regard to whether the director personally benefited from the actions. *See Lee*, 152 Or App at 174. We have emphasized that the heart of the fiduciary duty of a director or controlling shareholder is an attitude of seeking the interest of the beneficiary rather than the personal interest of the fiduciary, *see Chiles v. Robertson*, 94 Or App 604, 619-20, 767 P2d 903, *on recons* 96 Or App 658, 774 P2d 500, *rev den* 308 Or 592 (1989), which might suggest that failing to seek the interest of the minority is sufficient to show a breach of duty.

None of our previous cases decided whether proof that a shareholder will benefit from a decision is necessary to showing that the shareholder is a controlling shareholder. Whether a person is a controlling shareholder is a question that comes before, and is distinct from, what constitutes a controlling shareholder's breach of duty. To the extent that previous cases have dealt with that issue, they do not treat the shareholder's personal interest as relevant to whether the shareholder is a controlling shareholder. The closest Oregon case is *Stringer v. Car Data Systems, Inc.*, 108 Or App 523, 816 P2d 677, *on recons* 110 Or App 14, 821 P2d 418 (1991), *aff'd on other grounds* 314 Or 576, 841 P2d 1183 (1992), in which two of the 36 shareholders of a corporation asserted that the 32 shareholders who voted for a merger with a different corporation were "majority shareholders," while the plaintiffs and two nonparty shareholders who opposed the merger were "minority shareholders." We held that the mere fact that some shareholders voted a particular way did not mean that they were controlling shareholders with fiduciary duties towards those who voted a different way. "The question is whether a given shareholder or small number of shareholders has the requisite power to dictate or dominate corporate decisions, not whether a group of small shareholders happens to have outvoted another group on a

particular occasion." We also noted that "assertions of nefarious motives" did not affect that fact. 108 Or App at 527.

■ ■    As *Stringer* suggests, in order to be a controlling shareholder who owes fiduciary duties a shareholder must either be (1) an individual who owns a majority of the shares or who, for other reasons, has domination or control of the corporation or (2) a member of a small group of shareholders who collectively own a majority of shares or otherwise have that domination or control. *Ibid.* Nothing in *Stringer* suggests that a shareholder's interest or motive is relevant to determining whether the shareholder has control.

Other authorities support this conclusion. A leading treatise states that shareholders who combine for the purpose of controlling the corporation are generally considered fiduciaries and the minority shareholders are the beneficiaries. It does not refer to the shareholder's activities or personal interests as relevant to whether the shareholder is a fiduciary. 12B Charles Keating and Jim Perkowitz-Sulheim, *Fletcher Cyc Corporations* § 5765. That conclusion also follows from the definition of "controlling shareholder" that the American Law Institute uses in its *Principles of Corporate Governance*:

> "A 'controlling shareholder' means a person * * * who, either alone or pursuant to an arrangement or understanding with one or more other persons:
>
> "(1)   owns and has the power to vote more than 50 percent of the outstanding voting equity securities * * * of the corporation; or
>
> "(2)   otherwise exercises a controlling influence over the management or policies of the corporation or the transaction in question by virtue of the person's position as a shareholder."

American Law Institute, *Principles of Corporate Governance* § 1.10(a) (1994).

■    Johnson and Elder voted together at the Univend annual meeting as part of an express agreement to achieve a specific result with regard to both the settlement of the Crystal Lite lawsuit and the future governance of the corporation. In order to further that agreement, Elder gave Johnson an

irrevocable proxy, so that Johnson could have achieved that result even if Elder had later changed his mind and had attempted to vote a different way at the meeting. A jury could find, thus, that Johnson and Elder combined for the purpose of controlling the acts of the corporation and that they actually controlled those acts. From that finding the jury could additionally find that each of them was a controlling shareholder and that each of them owed fiduciary duties to the minority. We turn to whether there is evidence that either defendant beached his fiduciary duties.

In their briefs, plaintiffs assert that defendants violated their fiduciary duties in general, without pointing to the requirements of any specific duty. However, in their complaint they are more specific, and the cases that they cite and the arguments that they make on appeal are generally appropriate to the duties of loyalty and fair dealing. We will therefore consider those specific duties; the requirements of each appear to be similar in the context of this case.

■     In *Chiles,* we discussed the American Law Institute's statement of the duty of loyalty. We quoted section 5.11 of the *Principles of Corporate Governance* (Tentative Draft No. 5, 1986), which provides that " 'a dominating shareholder

" 'may not advance his pecuniary interest by using his dominating position * * * in a manner that:

" '(1)   causes reasonably foreseeable harm to the corporation or to its other shareholders in their capacity as shareholders; or

" '(2)   allows him to secure a pecuniary benefit [except in circumstances not relevant here].' " 94 Or App at 621.[5]

---

[5] The final version of the *Principles of Corporate Governance* uses the term "controlling shareholder" rather than "dominating shareholder." Additional changes to section 5.11 after 1986 include a shift in focus from the duty of loyalty to the duty of fair dealing. In *Chiles* we held that failure to comply with the 1986 version of section 5.11 would constitute a breach of fiduciary duty under Oregon law, although we also noted that the *Principles* do not necessarily state all of a controlling shareholder's fiduciary duties. Other than accepting "controlling shareholder" as the appropriate term, and section 1.10 as an appropriate definition of that status, we do not now need to decide the extent to which changes to this portion of the *Principles* after our decision in *Chiles* are consistent with Oregon law.

Under Section 1.10 of the final version of the *Principles*, two or more people may together be controlling shareholders; as we previously held, a jury could find that Johnson and Elder had that status when they called the annual meeting and voted their shares according to their agreement. A jury could also find that Johnson alone had that status because of the proxy that Elder had given him. Under the definition of "controlling shareholder" in the *Principles*, each shareholder who is part of an arrangement or understanding with other shareholders to control the corporation is, by himself or herself, a controlling shareholder. Thus, each individual member of the controlling group has individual fiduciary duties toward the minority. A corollary of that relationship is that one member of the group may breach those duties even if a different member did not.

■     Plaintiffs argue that the proper question in this situation is whether "the majority or controlling shareholders used their power to benefit themselves alone or in a matter detrimental to the minority. If they misused their power, their subjective motive is not particularly relevant." Because plaintiffs do not attach that argument to any specific fiduciary duty or provide any other legal support for it,[6] we do not decide whether it might be correct in other circumstances or as to other duties. It is incorrect as applied to the duties of loyalty and fair dealing described in the various versions of section 5.11.[7] An essential element of a breach of those duties is that the controlling shareholder has placed his or her personal interests above those of the minority. An intent to gain a pecuniary benefit, therefore, is, at the least, closely connected to a breach of those duties. That is not necessarily the case with other fiduciary duties.

---

[6] In *Wulf*, we held that a minority shareholder in a freeze-out situation did not have to plead or prove that the controlling shareholders *actually* profited from their breaches of duty. The alternative would be to immunize controlling shareholders who were so bungling in their attempted freeze-out that they did not gain from it. 135 Or App at 660-61. We did not decide in *Wulf* whether a freeze-out is actionable only if the controlling shareholders *intended* to benefit from it. That issue does not arise in this case, and we therefore do not decide it.

[7] The final version of section 5.11, like the version on which we relied in *Chiles*, applies only if the controlling shareholder acts to secure a pecuniary benefit.

■      Whatever may be the case with other kinds of breaches of other fiduciary duties, thus, a breach of duty described in section 5.11 expressly requires that the controlling shareholder act with the purpose of advancing his or her pecuniary interest. There is no question that Johnson did so when he voted to approve the settlement by which a corporation that he controlled acquired effective ownership of the patent that was Univend's only significant asset.[8] Because Johnson, as a controlling shareholder, owed fiduciary duties to plaintiffs independently of the duties that Elder owed them, that conclusion is sufficient to render Johnson potentially liable to defendants. Whether Elder breached his duties is irrelevant to whether Johnson is liable for his own breaches. The trial court erred in dismissing the breach of fiduciary duty claim against Johnson.

Plaintiffs also argue that the evidence shows that Elder acted to obtain a pecuniary benefit. After reviewing the record, we agree with the trial court's view of the evidence. We therefore affirm the entry of judgment in favor of Elder.

Reversed and remanded as to defendant Johnson; otherwise affirmed.

---

[8] The 10-year exclusive license that Univend gave Crystal Lite covered most of the remaining effective life of the patent.