Argued and submitted October 6, 2004, reversed and remanded with instructions to enter judgment for defendant March 15, 2006

## Norman C. LOCATI and R. Wayne Fields, *Respondents,*

*v.*

## Bradley R. JOHNSON, *Appellant,*

*and*

## Richard A. ELDER and Univend, Inc., an Oregon corporation, *Defendants.*

## CCV95 12356; A115343

131 P3d 779

Barbee B. Lyon argued the cause for appellant. With him on the briefs were Jeanne M. Chamberlain and Tonkon Torp LLP.

James R. Cartwright argued the cause for respondents. With him on the brief was Brooks F. Cooper.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

Defendant Bradley Johnson appeals a judgment in favor of plaintiffs Norman Locati and Wayne Fields. The judgment was entered following a trial in which a jury found that defendant breached fiduciary duties owed to plaintiffs in his capacity as a controlling shareholder. As we discuss below, this dispute is before us for the second time. *See Locati v. Johnson*, 160 Or App 63, 980 P2d 173, *rev den*, 329 Or 287 (1999) (*Locati I*).

■ Defendant assigns error to the trial court's denial of his motion for a directed verdict. We review the denial of a motion for a directed verdict for any evidence to support the verdict in plaintiffs' favor. *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918 (2003). Because there was no evidence that a breach by defendant of his fiduciary duties could have caused damage to plaintiffs, we reverse and remand for entry of judgment for defendant.[1]

We state the facts in the light most favorable to plaintiffs. *Id.* Plaintiffs are minority shareholders of Univend, Inc. ("Univend"). Defendant and another shareholder, Elder, owned a majority of shares of Univend, and plaintiffs claim that defendant breached his fiduciary duties as a controlling shareholder. Plaintiffs founded Univend with Elder after he invented a machine that would dispense newspapers a single copy at a time, preventing customers from taking more than they paid for. Plaintiffs agreed to assist Elder in developing and marketing the machine, and the three of them founded Univend for that purpose. They obtained a patent for the machine and assigned that patent to Univend. The patent was Univend's only significant asset.

Univend contracted with Crystal Lite Manufacturing, Inc. (Crystal Lite), a metal shop owned by defendant and his wife, to manufacture the machines. In addition to agreeing on behalf of Crystal Lite to manufacture the machines, defendant also agreed to invest in Univend. At the time of the

---

[1] Given our disposition in favor of defendant, we do not address his third assignment of error, challenging the trial court's refusal to give a requested jury instruction.

events involved in this case, defendant owned 22 percent of Univend's shares, Elder owned 37.5 percent, and plaintiffs each owned 10 percent. The other shareholders were not parties to this action.

Crystal Lite manufactured some machines for Univend, but Univend fell approximately $40,000 behind in its payments for that work. Crystal Lite then sued Univend for the unpaid $40,000. Defendant intended either to collect the debt or, failing that, to execute on Univend's assets to recoup the debt. Univend responded by filing a third-party complaint against defendant seeking to enforce an alleged stock-purchase agreement in which defendant, as part of his purchase of Univend shares, had agreed to provide Univend with a $100,000 line of credit.

Defendant initiated a shareholders' meeting for the purpose of settling the litigation between Crystal Lite, Univend, and himself. Before the meeting, defendant circulated a proposed resolution that would settle the litigation under the following terms: (1) Univend would give Crystal Lite an exclusive, 10-year license to commercially use and exploit the patent for the newspaper-dispensing machine; (2) Crystal Lite would pay $1.00 to Univend for each newspaper-dispensing machine that it sold; and (3) Crystal Lite would dismiss with prejudice its claims against Univend, and Univend would dismiss with prejudice its third-party claims against defendant.

Defendant discussed the proposed settlement with Elder before the shareholders' meeting. He told Elder that he planned to continue to produce the machines, but that he would market them more effectively than had been done before. He was prepared to make further investments in the machines through Crystal Lite, but not through Univend. Defendant told Elder that "it was a possibility down the road if everything fell into place" that Crystal Lite might involve Elder if it "needed to look at other machines, other engineering type things," but made "no promises, no guarantees." When asked whether he had made any promises to Elder about "what might be in it for him" if defendant's proposed resolution passed, defendant testified:

"I emphatically was very clear to * * * Elder, I—that I could not promise him anything, that I would not promise him anything, that he had to decide if—if he felt that this was a fair deal on the merits of what we'd talked about, um, that was written in this proposal."

Before they met at the annual shareholders' meeting, defendant and Elder made an agreement to pass defendant's proposed resolution, and Elder gave defendant a proxy, which stated that Elder "irrevocably appoints [defendant] proxy." Elder did not testify at trial.

When the shareholders' meeting was held, defendant moved for adoption of his proposed settlement and disclosed that he had a conflict of interest in voting his shares of the corporation as follows:

"In making these motions, I disclose for the record that I and my wife are the sole shareholders of Crystal Lite * * * and that I am personally a party adverse to this corporation in the lawsuit. I'm also a shareholder of [Univend]."

Elder was present at the meeting and voted his own shares; consequently, the proxy granted to defendant was never exercised, nor did defendant declare the proxy. With their combined 59.5 percent share of Univend, defendant and Elder passed the resolution, settling the litigation on defendant's terms. Plaintiffs and another shareholder, who collectively held 22.5 percent of the shares, voted against the proposal. The shareholders also elected a new board of directors that consisted of defendant, Elder, and plaintiff Locati. At the time of trial, Univend had not conducted any business since the shareholders' meeting.

Plaintiffs brought suit against defendant and Elder, alleging that they breached their fiduciary duties of loyalty and fair dealing as controlling shareholders. In *Locati I*, the trial court dismissed plaintiffs' claims before trial, holding that, to prove their claims, plaintiffs were required to prove "that *both* [defendant] and Elder acted 'for their own pecuniary or other improper purpose.' " 160 Or App at 66 (emphasis in original). Because the trial court concluded that there was insufficient evidence that Elder acted for an improper purpose, the court dismissed plaintiffs' claims against both Elder and defendant before trial. *Id.* at 66-67. On appeal in *Locati I*,

we held that plaintiffs presented sufficient evidence from which a jury could find that defendant and Elder became controlling shareholders who owed fiduciary duties to the minority shareholders. *Id.* at 70. We reasoned as follows:

> "[Defendant] and Elder voted together * * * as part of an express agreement to achieve a specific result with regard to both the settlement of the Crystal Lite lawsuit and the future governance of the corporation. In order to further that agreement, Elder gave [defendant] an irrevocable proxy, so that [defendant] could have achieved that result even if Elder had later changed his mind and had attempted to vote a different way at the meeting. A jury could find, thus, that [defendant] and Elder combined for the purpose of controlling the acts of the corporation and that they actually controlled those acts."

*Id.* at 69-70. We held that a jury could find that Elder and defendant, as controlling shareholders, individually owed fiduciary duties toward the minority shareholders. *Id.* at 70. Although we agreed with the trial court that there was not sufficient evidence for a jury to conclude that Elder breached any fiduciary duty, we held that there was sufficient evidence from which a jury could conclude that defendant breached his fiduciary duty of loyalty to the minority shareholders. *Id.* at 72. Accordingly, we reversed and remanded the case to the trial court for further proceedings. *Id.*

On remand, a jury returned a verdict finding that defendant breached his fiduciary duties to plaintiffs "when he voted * * * in favor of the resolution settling the Crystal Lite-Univend litigation[.]" The jury found that this breach caused damage to plaintiffs in the amount of $90,000. Defendant appeals from the resulting judgment.

Defendant advances several arguments, only one of which we address at length. First, defendant takes issue with our holding in *Locati I* that, because defendant and Elder voted together as part of an express agreement to achieve a specific result, furthered by Elder's grant of an irrevocable proxy,[2] defendant and Elder became "controlling shareholders." Second, defendant asserts that, even if he did owe plaintiffs a fiduciary duty of loyalty, he did not, as a matter of law,

---

[2] In *Locati I*, the irrevocability of the proxy was not challenged. 160 Or App at 66 n 2. During the trial and in this appeal, defendant contends that the proxy

breach that duty because he disclosed his conflict of interest before voting on his proposed resolution and a majority of disinterested shareholders—*i.e.*, Elder—then voted for the resolution.[3] Third, defendant contends that, even if he breached a fiduciary duty, his vote did not cause plaintiffs any damage, because even if he had abstained from voting, the settlement resolution would have passed by the votes of disinterested shareholders. Because we conclude that defendant's causation argument is correct, we do not express any opinion as to his other two arguments.

■     It is axiomatic that, for defendant to be liable to plaintiffs, defendant must have caused plaintiffs' damages. Plaintiffs assert that they were damaged when defendant breached his fiduciary duties owed to Univend by voting for a settlement agreement that transferred Univend's most significant asset—*i.e.*, the right to exploit the patent to the

---

was *not* irrevocable. ORS 60.231(5) states that "[a]n authorization of a proxy is revocable by the shareholder unless the authorization conspicuously states that it is irrevocable and the authorization is coupled with an interest." (Although the wording and the numbering of that provision have changed slightly since the time that the proxy was granted, we do not understand those changes to affect the parties' arguments and therefore, for convenience, cite the current version of ORS 60.231.) Defendant contends that, although the proxy conspicuously stated that it was irrevocable, Elder's authorization was not coupled with an interest. Because we decide this case in defendant's favor on other grounds, we do not address that issue.

[3] Defendant cites section 5.10 of the American Law Institute's *Principles of Corporate Governance: Analysis and Recommendations* (1994) in support of his argument. That section provides, in part:

"(a) *General Rule*. A controlling shareholder * * * who enters into a transaction with the corporation fulfills the duty of fair dealing to the corporation with respect to the transaction if:

"(1) The transaction is fair to the corporation when entered into; or

"(2) The transaction is authorized in advance or ratified by disinterested shareholders * * *, following disclosure concerning the conflict of interest * * * and the transaction * * *, and does not constitute a waste of corporate assets * * * at the time of the shareholder action."

(Emphasis in original.) Although Oregon courts have cited previous drafts of those rules favorably in the past, we also have stated that we "do not necessarily hold that those rules fully state all of the requirements that flow from acting with a fiduciary attitude." *Chiles v. Robertson*, 94 Or App 604, 620, 767 P2d 903, *adh'd to as modified on recons*, 96 Or App 658, 774 P2d 500, *rev den*, 308 Or 592 (1989). Because we decide this case on other grounds, we do not decide whether compliance with section 5.10 will always satisfy a controlling shareholder's duty of loyalty to the corporation.

newspaper dispensing machine—to Crystal Lite, a corporation owned by defendant. Assuming without deciding that defendant breached fiduciary duties owed to Univend when he voted for the resolution, defendant's vote did not cause plaintiff's damages. Defendant controlled only 22 percent of the shares in Univend. Elder, a disinterested shareholder who was present at the shareholders' meeting and voted in favor of the resolution, controlled 37.5 percent of the shares, while the shareholders who voted against the resolution controlled only 22.5 percent of the shares. The resolution would have passed absent defendant's vote, and the proxy that defendant had obtained from Elder, which was never exercised, played no role in the resolution's passage.

Plaintiffs also did not present any evidence that defendant improperly induced Elder to vote his shares in favor of the resolution. In *Locati I*, we determined from a record produced in the context of an offer of proof before trial that there was no evidence that Elder had a pecuniary interest in the transaction. 160 Or App at 72. After reviewing the record of the trial on remand, we conclude that there was no evidence that Elder's vote was the result of any improper inducement—financial or otherwise—by defendant. Indeed, plaintiffs concede that they did not present evidence from which a jury could conclude that Elder voted for the resolution because of self-interest or a pecuniary motive. Without such evidence, we are left only with defendant's testimony that he made no promises to Elder before the vote on the resolution. Because plaintiff presented no evidence that defendant caused plaintiffs' damages, we conclude that the trial court erred in denying defendant's motion for a directed verdict.

Reversed and remanded with instructions to enter judgment for defendant.